702 So.2d 242 (1997)
Debra Lee KNIGHT, Appellant,
v.
Gary Allan KNIGHT, Appellee.
No. 96-1912.
District Court of Appeal of Florida, Fourth District.
November 19, 1997.
*243 Bard D. Rockenbach of Sellars, Supran, Cole, Marion and Bachi, P.A., West Palm Beach, for appellant.
Richard G. Bartmon of Bartmon and Bartmon, Boca Raton, for appellee.
PER CURIAM.
This action arose when appellee sought to reduce his child support obligation for the parties minor child. Appellee's original obligation of $200 per week was established by a settlement agreement that was incorporated by the parties 1991 New Jersey dissolution judgment. The trial court herein domesticated the New Jersey judgment and reduced appellee's child support obligation to $335.24 per month. Appellant appeals the trial court's reduction of child support. We affirm in part, reverse in part and remand.

I.

Burden of Proof For Downward Modification
Relying upon Tietig v. Boggs, 602 So.2d 1250 (Fla.1992), appellant contends that the burden of proof to support a downward modification of a child support order is greater where such order was based upon an agreement between the parties than where the support award was not based upon such agreement. Relying on section 61.14(7), Florida Statutes, which was added in 1993, appellee argues that the burden of proof is the same regardless of any agreement. Section 61.14(7), Florida Statutes (1995), provides: "When modification of an existing order of support is sought, the proof required to modify a settlement agreement and the proof required to modify an award established by court order shall be the same."
The supreme court recently reiterated the well established rule that when "the child support was based on an agreement by the parties that was subsequently incorporated into an order, a heavier burden rests on the party seeking a reduction than would otherwise be required." Overbey v. Overbey, 698 So.2d 811, 814 (Fla.1997) (emphasis added) (citing Tietig). Like the instant case, the Overbey decision was concerned with a 1995 request for reduction in child support. It must be presumed that the supreme court's ruling was made with awareness of section 61.14(7), which had been in effect since July 1, 1993.
Thus, it appears that the supreme court has decided that section 61.14(7) does not apply to a petition to reduce child support. Even prior to the supreme court's decision in Overbey, the possibility of such an interpretation of the statute was recognized by the First District Court of Appeal based on the reasoning that "a parent may agree to a child-support obligation that exceeds the duty imposed by law." Matthews v. Matthews, 677 So.2d 323, 325 n. 1 (Fla. 1st DCA *244 1996) (citation omitted).[1]Contrast State, Dept. of Revenue v. Sumblin, 675 So.2d 691 (Fla. 1st DCA 1996) (settlement agreement does not result in heavier burden of proof on party moving for increase in child support, citing section 61.14(7) and Matthews). Accordingly, appellee should have been required to satisfy a heavier burden of proof in his petition to reduce child support than would have been required if the child support obligation was not based upon the agreement which was incorporated into the New Jersey order.

II.

The Merits
A substantial change of circumstances generally must be established before a child support obligation is modified. See, e.g., Overbey, 698 So.2d at 813. It was clear from the arguments presented below that appellee's primary basis for establishing a substantial change of his circumstances was section 61.30(1)(b), Florida Statutes (1995), which provides:
(b) The guidelines may provide the basis for proving a substantial change in circumstances upon which a modification of an existing order may be granted. However, the difference between the existing order and the amount provided for under the guidelines shall be at least 15 percent or $50, whichever amount is greater, before the court may find that the guidelines provide a substantial change in circumstances. Additionally, appellee asserted a substantial change of his financial situation. Although this basis was argued at the hearing only summarily as an alternative to the section 61.30(1)(b) basis, it was set forth more specifically in appellee's pleading which sought the modification.
It appears that the trial court found a substantial change in circumstances in both respects asserted by appellee. Paragraph number 6 of the judgment appears to acknowledge a substantial change of circumstances pursuant to section 61.30(1)(b); and paragraph number 5 of the judgment clearly finds a substantial change of circumstances pursuant to appellee's altered financial situation. Accordingly, an analysis of both bases is warranted.

Section 61.30(1)(b)
Apparently utilizing the information set out in appellee's amended financial affidavit, the trial court determined that appellee's support obligation under the Florida guidelines today would be 267% less, or $526 per month less, than the support obligation set out in the 1991 New Jersey judgment. It is clear that these figures fall within the ambit of 61.30(1)(b), and seemingly would constitute a substantial change of circumstances under the plain reading of this section.[2]
However, as appellant points out, such reading of the statute would permit a parent who agreed to pay child support above the guidelines (by at least 15% or $50) to subsequently, even soon after the entry of final judgment, modify such obligation by simply *245 resorting to section 61.30(1)(b) without a change of circumstances independent from that provided by this section. It is difficult to believe that the Legislature intended to permit a child support agreement to be so easily circumvented by virtue of the differential in the support obligation amounts where there was no change of circumstances independent from that provided by section 61.30(1)(b). Rather, a more reasonable interpretation of this section, as suggested by appellant, is that a change of circumstances independent of section 61.30(1)(b) is required and that this section was intended only to provide one simplified means of establishing that such change was substantial.
The Third District Court of Appeal recently wrestled with this issue in Turner v. Turner, 695 So.2d 422 (Fla. 3d DCA 1997):
We have carefully reviewed the legislative history of the amendments to section 61.30(1)(b), Florida Statutes since the 1987 enactment of the child support guidelines, and find no clear support for the result in this case in which the guidelines statute is used as the sole basis on which to relieve a father from an agreed-to, judicially adopted child support order entered more than six years after the enactment of the child support guidelines. We are aware that the wording of the statute, on its face, arguably supports the action taken by the trial court in this case. However, we conclude that the legislature could not have intended to allow a father to use the guidelines statute to avoid his own, freely entered agreement within one year of its making even though his income has increased and the child's needs have not decreased, particularly where, as here, there is no finding of fraud, duress, or other intentional misleading circumstances surrounding the entry of the settlement agreement.
In light of the admittedly broad statutory language and the lack of specific guidance for its application to downward modifications of judicially adopted settlement agreements entered into after enactment of the guidelines, we certify the following question as one of great public importance to permit further review of this case by the Supreme Court of Florida:
WHERE THERE HAS BEEN NO REDUCTION IN ABILITY TO PAY OR IN THE NEEDS OF THE CHILD, MAY A PARENT'S CHILD SUPPORT OBLIGATION AGREED TO AFTER ENACTMENT OF THE STATUTORY GUIDELINES BE MODIFIED DOWNWARDLY, PURSUANT TO SECTION 61.30(1)(b), FLORIDA STATUTES (1995), SOLELY ON THE BASIS THAT THE AGREED-TO AMOUNT EXCEEDS THE STATUTORY GUIDELINES AMOUNT WHICH WOULD BE PAYABLE IN ABSENCE OF THE AGREEMENT OF THE PARTIES?
Turner, 695 So.2d at 423-24 (footnotes omitted). Although the facts of the instant case are slightly different than those in Turner, the above reasoning is applicable to the question of whether section 61.30(1)(b) on its own would provide a basis to reduce appellee's child support obligation if the record did not support the court's determination of a substantial change in appellee's financial situation. Although we conclude below that the record does support such determination in the instant case, we certify the same question as in Turner.

Substantial Change in Appellee's Financial Circumstances
Appellant does not dispute that appellee's financial circumstances have changed, as evidenced by the changes noted by the court in paragraph 5 of its judgment. Rather, the crux of her position is that although the sources of appellee's income have changed, the amount of his income is still approximately equal to that at the time of the 1991 New Jersey order, and thus any change in circumstances is not substantial as is required to modify child support.
Utilizing information from appellee's tax returns, appellant's counsel calculated appellee's 1991 pretax income to be $24,319 and his 1995 pretax income to be $24,770. Although appellee agreed to these income figures, he explained that the 1991 figure did not accurately reflect the actual in-pocket *246 money that he had at that time. He explained that his cash flow in 1991 was increased above this income figure because he had $10,500 in depreciation on his real estate properties, which he did not have in 1995. Appellee testified that in terms of cash flow, this real estate depreciation put $10,500 more in his pocket to take home that year.
Based on this testimony, we conclude that the trial court did not err in determining that appellee suffered a substantial change of circumstances. Particularly where his original child support obligation was above what a guideline amount would have been, it is not unreasonable to conclude that appellee's ability to pay child support was substantially altered by the loss of the depreciation amount on his real estate properties. Accordingly, the trial court did not abuse its discretion in reducing appellee's child support obligation.

Amount of Reduced Child Support Award
Our partial reversal is occasioned by the trial court's erroneous determination of the amount of future monthly child support as being $335.24.
In reducing appellee's child support obligation to $335.24 per month, the trial court relied upon appellee's amended financial affidavit which included a $8,266.79 deduction from income for "court ordered support payments for the children actually paid" annually. Although not explicitly stated, it is readily apparent from the transcript that this deduction was for the child support payments made on behalf of the child of the parties and not some other child of appellee.
However, section 61.30(3)(f), Florida Statutes (1995) (emphasis added), regarding calculation of income for child support purposes, provides for a deduction from gross income for "Court-ordered support for other children which is actually paid." From the plain language of this statute, as well as cases applying it, it is apparent that this income deduction relates to child support actually paid for children other than those shared by the parties to the subject dissolution. See, e.g., Green v. Green, 672 So.2d 49 (Fla. 4th DCA 1996); Batts v. Batts, 600 So.2d 1301 (Fla. 5th DCA 1992); see also Copeland v. Copeland, 667 So.2d 487 (Fla. 1st DCA 1996) ("The language of section 61.30(3) was intended to permit only those items listed in the statute as deductions from gross income.").
Without the improper $8,266.79 deduction from appellee's gross income, appellee's annual income for child support purposes (using the remaining information on his amended financial affidavit) is $26,869.75 per year or $2,239.14 per month. Utilizing the same income for appellant that the trial court used, the total support obligation under the guidelines is $710 per month. Appellee's share is 66.7% or $473.57 per month. Although this error in calculating appellee's income for child support purposes was not raised on appeal, it is apparent from a review of the record.
Accordingly, on remand the trial court is directed to amend its final judgment of modification consistent herewith.

Recusal of Trial Judge
Finally, we are not persuaded by appellant's argument that the judgment was tainted by a bias in favor of appellee on the part of the trial judge, who recused himself pursuant to appellant's motion twelve days after the final judgment of modification was filed.
GLICKSTEIN, GUNTHER and POLEN, JJ., concur.
NOTES
[1] Although the first district was not faced with a downward modification request, it reasoned:

There is no "justification for imposing a heavier burden where the [original child support] provision is established by agreement than where it is imposed by the court," if the obligor does not seek a reduction.... The Tietig majority concluded that "the heavy burden rule is inapplicable only when an increase in child support is sought." Whether there is still a heavier burden for the parent seeking a downward modification in child support where the existing order embodies a settlement agreement is an open question after enactment of [section 61.14(7)]. The Legislature seems to have adopted the view espoused in the separate opinions in Tietig, which categorically rejected "two different burdens of proof for establishing a change of circumstance that justifies a modification." On the other hand, "a parent may agree to a child-support obligation that exceeds the duty imposed by law."
Matthews, 677 So.2d at 325 & 325 n. 1 (citations omitted).
[2] As will be discussed below, appellee's amended financial affidavit contains an apparent error in the calculation of his income for child support purposes. Additionally, footnote 3 of appellee's brief points out another arithmetic mistake. It notes that the correct figure regarding the differential in support obligations was 256.5% or $524.76. Nonetheless, even accounting for these errors, the difference between the current Florida guideline amount and the obligation under the New Jersey judgment would still fall within the parameters of section 61.30(1)(b).