### In re the MARRIAGE OF John E. KRAFT, Appellant–Petitioner,

v.

### Wendy H. Kraft (nka Hall), Appellee–Respondent.

### No. 22A04–0612–CV–752.

Court of Appeals of Indiana.

July 5, 2007.

---

Larry J. Schad, Schad & Palmer, New Albany, IN, Attorney for Appellant.

S. Frank Mattox, Debra S. Andry, Mattox Mattox & Wilson, New Albany, IN, Attorneys for Appellee.

**OPINION**

SHARPNACK, Judge.

John E. Kraft appeals the trial court's denial of his petition for modification of child support. Kraft raises three issues, which we consolidate and restate as whether the trial court abused its discretion by denying Kraft's petition for modification of his child support. We reverse and remand.

The relevant facts follow. Kraft and Wendy (Kraft) Hall's marriage was dissolved in October 1998. Pursuant to the parties' settlement agreement that was incorporated into their decree of dissolution, Kraft paid child support to Hall in the amount of $230.55 per week for the support of their two minor children. However, the parties agreed to exchange actual income information at the end of each year and recalculate Kraft's child support obligation because Kraft received substantial bonuses through his employment.

In May 2004, neither Kraft nor Hall was satisfied with the child support arrangements. Kraft and Hall's subsequent husband were unhappy with exchanging income tax returns each year, and Kraft wanted more parenting time with the children. The parties reached an agreement through mediation. The mediation agreement provided that Kraft would have more parenting time and that the child support provisions would be modified as follows:

> The parties have agreed that the child support shall be modified retroactive to January 2003, and that [Kraft] shall be responsible to pay [Hall] the sum of $350 per week, beginning June 5, 2004. This agreement is a compromise between the parties of several competing positions expressed during mediation and may not be consistent with the Indiana Child Support Guidelines. The attached child support exhibit is not agreed to accurately reflect the parties['] income but represents a framework of competing positions.

Appellant's Appendix at 26. The trial court approved the parties' agreed modification.

On October 27, 2004, Kraft filed a petition to modify his child support obligation pursuant to Ind.Code § 31–16–8–1(1). Kraft alleged that, following the parties' mediated agreement, there had been a substantial and continuing change of circumstances regarding his employment. Specifically, Kraft alleged that his business enterprise had been restructured, contracts had been lost, and his income had been significantly reduced. After a hearing, the trial court found "changes of circumstances of a substantial and continuing nature" and ordered that Kraft's child support obligation be reduced to $116.28 per week effective May 20, 2005. *Id.* at 34.

Hall appealed the trial court's modification of Kraft's child support obligation. On appeal, this court held:

> Father testified that he worked in the power industry. Caldwell Energy and Environmental was in dissolution at the time of the modification hearing, and the assets of that company had been transferred to Caldwell Energy, LLC d/b/a Caldwell Energy Company. He described the service provided as follows: "We provide equipment to power generation plants to improve their power generating capabilities either with more output or better efficiency at the power plants." (Tr. 9.)
>
> In Father's testimony, he indicated that his company "rode a wave" during deregulation and "overbuilt the U.S. power generation market." (Tr. 15.) He anticipated "a battle and a struggle" for the future. (Tr. 17.) Father also testified that "the industry had been slow" since 2000 or 2001. (Tr. 10). As there had been "very minimal capital expenditures by [domestic] power plants," Father's company sought contracts in Mexico. (Tr. 10.) In the summer of 2004, after mediation, Father learned that he would be unable to obtain a contract with the Mexican government and had to lay off the majority of his employees.
>
> Without dispute, Father's company was not as profitable as it had been

during "the wave" of prosperity. Nevertheless, his testimony largely centered upon conditions existing at the time of mediation. Although Father learned after the mediated agreement was approved that he would not be obtaining a contract with the Mexican government brokered through Seeman's Corporation, this information does not represent a change in circumstances. Father's company did not hold the hoped-for contract prior to mediation and did not acquire the contract afterward.

Father also testified regarding a circumstantial change since mediation, albeit one at least partially within his control as a shareholder of Caldwell Energy, LLC. While Father's 2004 salary was $90,000.00, he "made a personal cut" to provide for a 2005 salary of $75,600.00. (Tr. 25.) Nevertheless, the $14,400.00 salary reduction does not independently establish that Father sustained a "continuing" reduction in income such that the existing order is "unreasonable." Other testimony indicates that Father is involved in various investments or business ventures, and he has historically been able to reduce his salary to increase his investment in a business enterprise. He and his current wife recently acquired rental property having equity of $53,000.00 and held a money market account having a balance of $294,434.19 at the end of calendar year 2004. They have taken preliminary steps toward the acquisition of a restaurant franchise. They constructed their current residence in 2004. The equity in the residence was $203,000.00 at the time of the modification hearing.

We conclude, as a matter of law, that Father did not show that there developed, after mediation, "changed circumstances so substantial and continuing" as to make the mediated child support order "unreasonable" and necessitate the drastic reduction in child support ordered by the trial court. We therefore reverse the modification order and direct the trial court to restore the child support order of May 25, 2004 and to determine, in a timely hearing, a schedule for the payment of the resultant child support arrearage.

*Kraft v. Kraft,* No. 22A01–0506–CV–268, slip op. at 4–6, 842 N.E.2d 895 (Ind.Ct. App. Jan.18, 2006) (footnote omitted). We also noted that, at the time Kraft filed his petition to modify child support, he did not qualify for a modification under Ind.Code § 31–16–8–1(2) because less than twelve months had elapsed since the last child support order. *Id.* at 3 n. 1.

On February 2, 2006, Kraft filed another petition to modify child support. Kraft alleged that he was entitled to modification pursuant to both Ind.Code § 31–16–8–1(1) and Ind.Code § 31–16–8–1(2). At a hearing on the petition, Kraft testified that he was currently vice-president of Caldwell Tanks, where he earned $90,000.00 per year, had an ownership interest in the company of less than two percent, and had no potential for earning bonuses. Kraft took this position in October 2005. At the time of the mediation agreement, Kraft was working for Caldwell Energy Company and he was anticipating income greatly in excess of his $90,000.00 salary due to bonuses. After the mediation, Caldwell Energy "pretty much folded." Transcript at 52–53. Hall conceded during her testimony that Kraft was "heavily bonused" in his prior job and that during one year his income reached almost $400,000.00 to $450,000.00 due to his bonuses. *Id.* at 41. According to Hall, Kraft's $274,000.00 income in their mediation agreement was reached by taking a three-year average of his past incomes with bonuses. The trial court denied Kraft's petition for modification.

■ The issue on appeal is whether the trial court abused its discretion by denying Kraft's petition for modification of child support. In reviewing a determination of whether child support should be modified, we will reverse the decision only for an abuse of discretion.[1] *In re E.M.P.*, 722 N.E.2d 349, 351 (Ind.Ct.App.2000). We review the evidence most favorable to the judgment without reweighing the evidence or reassessing the credibility of the witnesses. *Id.* An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the court, including any reasonable inferences therefrom. *Id.*

■ The modification of a child support order is governed by Ind.Code § 31–16–8–1, which provides:

> Provisions of an order with respect to child support ... may be modified or revoked. Except as provided in section 2 of this chapter, modification may be made only:
>
> (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or
>
> (2) upon a showing that:
>
> (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and
>
> (B) the order requested to be modified or revoked was issued at least twelve (12) months before

the petition requesting modification was filed.

Kraft had the burden of establishing that he was entitled to have the child support order modified. *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940 (Ind.2005).

Kraft argues, in part, that the trial court abused its discretion by denying his petition to modify child support because he met the requirements of Ind.Code § 31–16–8–1(2). Kraft demonstrated that in May 2004 he agreed to pay child support of $350.00 per week, and the trial court approved the agreement. However, at the time of his February 2006 petition for modification, his child support under the Guidelines would have been only $108.69 per week (including a credit for parenting time for 182 overnights). Thus, Kraft demonstrated that he had been "ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines" and that "the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed." I.C. § 31–16–8–1(2).

Hall does not dispute that Kraft met the requirements of Ind.Code § 31–16–8–1(2). Rather, relying upon *Hay v. Hay*, 730 N.E.2d 787 (Ind.Ct.App.2000), Hall argues that, because Kraft agreed to pay $350.00 per week in child support, he must meet the requirements of Ind.Code § 31–16–8–1(1) to receive a modification of the child support. Thus, Hall argues that Kraft was required to make a showing of changed

---

1. The Indiana Supreme Court recently noted that the standard of review in family law matters has been phrased as both "abuse of discretion" and "clear error." *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940 (Ind.2005). "[T]his deference is a reflection, first and foremost, that the trial judge is in the best position to judge the facts, to get a feel for the

family dynamics, to get a sense of the parents and their relationship with their children—the kind of qualities that appellate courts would be in a difficult position to assess." *Id.* (citing Hon. Denise R. Johnson, Address at the 2004 Appellate Judges Summit (Nov. 13, 2004)).

circumstances so substantial and continuing as to make the terms unreasonable and that Kraft failed to do so.

In *Hay*, the father agreed to pay $150 per week in child support and agreed to pay for the children's college education. 730 N.E.2d at 791. Several years later, one of the children enrolled in college, and the father filed a petition to modify child support. *Id.* The father alleged that the child's intent to attend college was a substantial change in circumstances and that "he could not have known what the actual school costs were until his daughter enrolled in college." *Id.* The trial court denied the father's petition to modify child support. *Id.*

On appeal, another panel of this court agreed that "the mere fact that a child actually enrolls in college [was] not a change in circumstances as such enrollment was contemplated by the parties" in their agreement. *Id.* at 793. Additionally, the father failed to show that the mother's increased income was a substantial change. *Id.* at 793–794. Thus, the father failed to show a substantial change in circumstances justifying a modification of the child support order under Ind.Code § 31–16–8–1(1). *Id.* at 794.

Further, the panel held that the father had waived any argument that he was entitled to modification due to a twenty percent deviation under Ind.Code § 31–16–8–1(2) because the father failed to present the argument to the trial court. *Id.* In dicta, the panel then held:

Waiver notwithstanding, however, [the father's] argument is unavailing. While we recognize the plain language of the statute would permit modification under these circumstances, we find it difficult to believe that the legislature intended to permit a child support agreement to be so easily circumvented by virtue of the differential in the support obligation

amounts where there was not a change of circumstances independent from that provided by Ind.Code § 31–16–8–1(2). To reduce support on this basis alone vitiates the agreement of the parties and runs contrary to the public policy of encouraging parties to agree on matters of child custody and support. See Ind. Code § 31–15–2–17(a)(3) ("To promote the amicable settlements of disputes that have arisen or may arise between the parties to a marriage attendant upon the dissolution of their marriage, the parties may agree in writing to provisions for: ... (3) the custody and support of the children of the parties."); *Clark v. Madden*, 725 N.E.2d 100, 106 (Ind.Ct.App.2000) ("[W]e encourage parents to come to agreements for educational expenses as soon as possible."); *Mundon v. Mundon*, 703 N.E.2d 1130, 1134 (Ind.Ct.App.1999) ("Indiana law 'expressly encourages' divorcing spouses to reach such agreements.").

Rather, we agree with [the mother] that when a parent has agreed to pay support in excess of the guidelines and which could not be ordered by a trial court, that parent must show a substantial change in circumstances independent of the twenty percent deviation to justify modification. *See Flannery v. Flannery*, 950 P.2d 126, 132 (Alaska 1997) (stating that when a party agrees to pay an amount in excess of that required by statute, the 15% deviation rule is inapplicable), *reh'g denied; Knight v. Knight*, 702 So.2d 242, 244–45 (Fla.Dist. Ct.App.1997) (holding that absent an independent change in circumstances such as an inability to pay, a support order will not be modified solely on the basis that the amount agreed to exceeds the amount payable under the guidelines); *Smith v. Collins*, 107 Ohio App.3d 100, 105, 667 N.E.2d 1236, 1239 (1995) (hold-

ing that "when a party voluntarily agrees to a child support obligation which exceeds the statutory support schedule by more .than ten percent, that party must show a substantial change of circumstances beyond the statutory ten percent deviation before the trial court may modify the support obligation"). We agree with the holding of the Florida court in *Knight* that "a more reasonable interpretation of this section ... is that a change of circumstances independent of [I.C. § 31–16–8–1] is required and that this section was intended only to provide one simplified means of establishing that such change was substantial." *Knight*, 702 So.2d at 245; *see also Flannery*, 950 P.2d at 132 (noting that the 15% rule can demonstrate materiality, but is not a definition of what constitutes a change of circumstances).

Here, [the father] agreed to pay all of his daughters' college expenses at a public institution. Thus, he must show a change of circumstances independent of the deviation. As discussed above, [the father] failed to meet this burden. [The father] has not shown that his income has decreased making him unable to pay the college expenses or that [the mother's] income has significantly increased making the terms of the agreement unreasonable. Thus, the trial court did not err in denying [the father's] petition for modification.

*Id.* at 794–795. Following *Hay*, the only reference to this principle has been in *MacLafferty*, 829 N.E.2d at 941 n. 5, where the Indiana Supreme Court observed in passing that "[t]he result [in modification of child support cases] might well be affected by prior agreements of the parties. *See Hay v. Hay*, 730 N.E.2d 787 (Ind.Ct.App.2000)."

Kraft urges us to reconsider the dicta in *Hay* because *Hay* disregarded the clear language of Ind.Code § 31–16–8–1 and because *Hay* runs contrary to the public policy of encouraging parties to agree. *See* Ind.Code § 31–15–2–17 (discussing provisions to "promote the amicable settlements of disputes that have arisen or may arise between the parties to a marriage attendant upon the dissolution of their marriage"). Kraft points out that parents are less likely to reach such agreements regarding child support if they will have "a tougher time changing the agreement later" and that "having such an added burden would do nothing but discourage parents from ever agreeing to pay more than absolutely necessary." Appellant's Brief at 20. We agree with Kraft.

We first observe that "while Indiana courts have encouraged divorcing couples to resolve disputes amicably, they have also consistently distinguished property and maintenance agreements from agreements governing child support, custody, and visitation." *Dewbrew v. Dewbrew*, 849 N.E.2d 636, 642 (Ind.Ct.App.2006). In fact, Ind.Code § 31–15–2–17 prohibits the modification of agreements regarding the distribution of property, but the statute does not contain the same prohibition regarding modification of child support or custody agreements. See *Meehan v. Meehan*, 425 N.E.2d 157, 160 (Ind.1981) (discussing the prior version of Ind.Code § 31–15–2–17); *see also Voigt v. Voigt*, 670 N.E.2d 1271, 1278 n. 10 (Ind.1996) ("[T]he same principles and standards [regarding the freedom to contract] cannot apply to child custody and support provisions of proffered settlement agreements."); *Mundon v. Mundon*, 703 N.E.2d 1130, 1136 (Ind.Ct.App.1999) ("But where provisions are made in the interest of the support and custody of children, as opposed to those which merely set forth rights in property, our legislature and sound public policy dictate that the trial court must play a role,

and a settlement agreement cannot be shielded from or circumvent the court's fulfillment of that duty."). In fact, we have held that "the fact that the support order was entered pursuant to a property settlement and child custody agreement ... did not deprive [the father] of the right to seek modification and is of no consequence to the question of whether the support order should be subsequently modified." *Kirchoff v. Kirchoff,* 619 N.E.2d 592, 595 (Ind. Ct.App.1993), *disapproved on other grounds by Merritt v. Merritt,* 693 N.E.2d 1320, 1324 n. 4 (Ind.Ct.App.1998). Consequently, it is clear that despite an agreement between the parents regarding child support, the child support order may be subsequently modified. The issue then is what a parent is required to show to obtain a modification of the child support.

In determining this issue, we take guidance from the Indiana Supreme Court's opinion in *Meehan v. Meehan,* 425 N.E.2d 157 (Ind.1981). There, the parties had an agreement that the father would pay $500 a month in child support, and the trial court approved the agreement. 425 N.E.2d at 158. The trial court later granted the father's petition for modification of child support, and this court held that the trial court had abused its discretion in part because "if approved by the court and incorporated and merged into the final decree, the terms of such an agreement should not be modified unless they have become clearly unreasonable." *Meehan v. Meehan,* 415 N.E.2d 762, 767 (Ind.Ct.App. 1981), *vacated by Meehan,* 425 N.E.2d at 157–158.

The Indiana Supreme Court disagreed and held that the trial court's decision to modify the child support was supported by the evidence. 425 N.E.2d at 162. Specifically, the court noted that the modification of a child support order was "governed solely by the unambiguous terms" of Ind. Code § 31–1–11.5–17(a) (repealed by Pub.L. No. 1–1997, § 157; *see now* Ind. Code § 31–16–8–1), which read in pertinent part: "Provisions of an order with respect to child support may be modified or revoked. Such modification shall be made only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." *Id.* at 160. The court noted that:

> This statutory standard is applicable to all support orders, regardless of the origins of the terms. In other words, the fact that a child support order has been entered pursuant to the terms of a settlement agreement, even where, as here, it is intended as forever determinative by the parties, is of no consequence to the question whether the order should subsequently be modified.

*Id.*

Despite the court's concern that parties be bound by their agreements, the court concluded that it was "imperative" that it adhere to the language of the statute because "the standard enunciated therein facilitates the amicable settlement of disputes for which the Dissolution of Marriage Act is expressly designed." *Id.* The court emphasized the importance of adhering to the statutory language as follows:

> Cognizant that the specter of a rule whereby support agreements were unilaterally binding would cloud parties' negotiations, the legislature provided them with a mutually-applicable standard, based on equitable considerations, against which the parties can assess the likelihood that a support agreement will subsequently be modified. If our courts deviate even slightly from this delicate balance struck by the legislature, parties will be inhibited in their negotiations and the purpose of the Act will be frustrated.

*Id.* The Indiana Supreme Court concluded that this court "strayed from the mandates" of the statute governing modification of child support. *Id.* Applying the language of the statute as written, the Indiana Supreme Court held that the trial court did not abuse its discretion by granting the father's petition to modify child support. *Id.* at 162.

■ Following the Indiana Supreme Court's directives in *Meehan,* we conclude that we should interpret Ind.Code § 31–16–8–1 as it is written regardless of whether the child support order has been entered pursuant to the terms of a settlement agreement and regardless of whether the agreement to pay child support is in excess of the guidelines. Consequently, we disagree with the dicta in *Hay,* which held that "when a parent has agreed to pay support in excess of the guidelines and which could not be ordered by a trial court, that parent must show a substantial change in circumstances independent of the twenty percent deviation to justify modification." *Hay,* 730 N.E.2d at 795. Under the clear language of Ind.Code § 31–16–8–1, Kraft was entitled to modification of the child support order if he demonstrated *either:* (1) a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; *or* (2) that he had been "ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines" and that "the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed." I.C. § 31–16–8–1. Kraft met the requirement of showing a twenty percent deviation. Consequently,

Kraft was entitled to modification of the child support order, and we conclude that the trial court abused its discretion by denying Kraft's petition for modification of the child support. *See, e.g., Sutton v. Sutton,* 773 N.E.2d 289, 295 (Ind.Ct.App.2002) (holding that the trial court abused its discretion by denying the parent's petition for modification of child support).

■ Notwithstanding our disagreement with *Hay,* we also conclude that, even under *Hay,* Kraft's petition for modification should have been granted because he established "a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." I.C. § 31–16–8–1(1). At the time Kraft entered into the agreement regarding child support in May 2004, he was employed by Caldwell Energy Company and he was anticipating income greatly in excess of his $90,000.00 salary due to bonuses. Hall conceded during her testimony that Kraft was "heavily bonused" in his prior job and that during one year his income reached almost $400,000.00–$450,000.00 due to his bonuses. Transcript at 41. According to Hall, Kraft's $274,000.00 income in their mediation agreement was reached by taking a three-year average of his past incomes with bonuses. After the mediation, Caldwell Energy "pretty much folded." *Id.* at 52–53. Kraft is now employed as a vice-president of Caldwell Tanks, where he earns $90,000.00 per year, has an ownership interest in the company of less than two percent, and has no potential for earning bonuses. Kraft took this position in October 2005.

Kraft has incurred a substantial decrease in his pay due to his loss of bonuses.[2] Under such circumstances, we have found changed circumstances so substan-

---

**2.** Hall argues that this argument is similar to the one raised by Kraft in the first appeal. However, our review of this court's decision in the earlier appeal reveals no discussion of Kraft's bonuses. See *Kraft,* No. 22A01–0506–CV–268, slip op. at 4–6, 842 N.E.2d 895.

tial and continuing as to make the terms unreasonable. *See, e.g., Burke v. Burke,* 809 N.E.2d 896, 899 (Ind.Ct.App.2004) (holding that the trial court correctly determined that the father's $10,000.00 decrease in pay was a substantial change in circumstances); *Abouhalkah v. Sharps,* 795 N.E.2d 488, 492 (Ind.Ct.App.2003) (holding that the trial court erred by denying the father's petition to modify child support based upon the father's decrease in income). Consequently, we conclude that the trial court abused its discretion by denying Kraft's petition to modify child support.

For the foregoing reasons, we reverse the trial court's denial of Kraft's petition to modify child support and remand for proceedings consistent with this opinion.

Reversed and remanded.

MAY, J. and BAILEY, J., concur.