Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Oct 01 2013, 5:35 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**JAMES R. WILLIAMS**
**MATTHEW L. KELSEY**
DeFur Voran LLP
Muncie, Indiana

ATTORNEY FOR APPELLEE:

**HUGH R. HUNT**
Sullivan, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SAMUEL C. BOWYER, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No.  18A02-1301-DR-88 |
| | ) | |
| KELLEY S. BOWYER, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Thomas Cannon, Jr., Judge
Cause No. 18C05-1103-DR-22

**October 1, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issue

Samuel C. Bowyer ("Sam") appeals the trial court's denial of his petition to modify child support. Sam presents one issue on appeal: whether the trial court abused its discretion by failing to modify his child support obligation. Concluding that the trial court did abuse its discretion, we reverse and remand.

## Facts and Procedural History

Sam and Kelley Bowyer were married in 1991 and have two children: Sarah, who was 19 years old at the time of the dissolution, and G.B., who was 14 years old at the time of the dissolution. In March 2011, Kelley filed a pro se petition for dissolution of marriage; Sam was also pro se in the dissolution matter. In May 2011, the Bowyers filed a joint petition for dissolution of marriage, a marital settlement agreement (the "Agreement"), and various worksheets. The child support worksheet listed Sam's weekly income as $1,885 and Kelley's as $885, and the recommended weekly support from Sam to Kelley was calculated to be $175. The Agreement, however, provided that Sam would pay Kelley $250 weekly in child support. The record indicates that Kelley was making $75,000 per year at the time of the dissolution, but that both parties expected her to soon thereafter leave her administrative position and return to teaching in the classroom and to consequently have a much lower salary. Because of that expectation, Sam agreed to a higher amount of child support.[1] The

---

[1] Certain things regarding the parties' salaries and the calculations used on various worksheets are unclear. In the first worksheet, calculated at the time of the dissolution, Kelley's weekly salary is listed as $885, which corresponds to much less than $75,000 per year. It is unclear whether the parties used a projected lower salary for Kelley in that worksheet and, if so, how that relates to Sam's willingness to pay more child support than calculated in the worksheet based on the assumption that Kelley's salary would be reduced soon after dissolution.

Agreement also provided for division of medical and college expenses. Later that same month, May 2011, the marriage was dissolved and the Agreement was incorporated into the dissolution. Kelley was awarded joint legal custody and primary physical custody of G.B., and Sam was awarded joint legal custody of G.B. and parenting time. Parenting time amounted to three days per week for Sam and four days per week for Kelley.

In November 2011, Sam filed a petition to modify custody, parenting time, and child support. A hearing was held in November 2012, and during the hearing, Sam withdrew his petition to modify custody. In December 2012, the trial court issued an order denying Sam's petition to modify child support and ordering Kelley to reimburse Sam for certain expenses. The trial court found that modification was unavailable because the petition was filed less than twelve months after the order establishing support; Sam was estopped from arguing that support should be modified based on more than twenty percent difference from the guideline amount because he knowingly and voluntarily entered into the Agreement; and there were no changed circumstances so substantial and continuing as to make the agreed child support unreasonable. This appeal followed. Additional facts will be supplied as necessary.

Discussion and Decision

I. Standard of Review

In reviewing a determination of whether child support should be modified, we will reverse the decision only for an abuse of discretion. In re Marriage of Kraft, 868 N.E.2d 1181, 1185 (Ind. Ct. App. 2007). We review the evidence most favorable to the judgment without reweighing the evidence or reassessing the credibility of the witnesses. Id. An abuse

3

of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the court, including any reasonable inferences therefrom. Id.

Where a party claims changed circumstances as the basis for a modification, we rely on the trial court's determination of the respective incomes of the parties, and, as always, defer to the trial court's judgment as to credibility. MacLafferty v. MacLafferty, 829 N.E.2d 938, 941 (Ind. 2005). However, the determination of whether the changed circumstances are "'so substantial and continuing' as to render the prior child support order's terms 'unreasonable' is, at minimum, a mixed question of law and fact." Id. To the extent it is a question of law, we review the question de novo. Id.

## II. Bright-Line Basis for Modification

Indiana Code section 31-16-8-1 is applicable to a request for modification of child support, and the statute provides:

> (a) Provisions of an order with respect to child support . . . may be modified or revoked.
> (b) Except as provided in section 2 of this chapter, modification may be made only:
>> (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or
>> (2) upon a showing that:
>>> (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and
>>> (B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

The statute provides two possible paths for modification: 1) a bright-line basis where the petitioner needs to show a certain filing timeline as well as a twenty percent difference

between the ordered and calculated amount owed, and 2) a more subjective basis under which the petitioner must show changed circumstances. Sam first argues that the trial court wrongly concluded he was not entitled to modifications based on the bright-line rules of subsection (b)(2).

Subsection (b)(2) has two prongs. The trial court found that Sam had not met the first prong regarding a twenty percent difference in amount because he knowingly agreed to pay more than required. Sam argues that the Agreement is not a factor and the twenty percent rule applies to him regardless of how or why the payment was ordered. We agree. Not only does the plain language of the statute support Sam's argument, but we also find the reasoning in In re Marriage of Kraft, 868 N.E.2d 1181, 1187 (Ind. Ct. App. 2007) persuasive. In Kraft, we reconsidered dicta in a previous case, Hay v. Hay, 730 N.E.2d 787, 790 (Ind. Ct. App. 2000), in which it was suggested that a father would not have been eligible for modification due to a twenty percent difference where the father had agreed to pay support in excess of guidelines. In Kraft, we agreed with the appellant that Hay was contrary to the clear language of the statute as well as public policy. 868 N.E.2d at 1187. We agreed that the policy of encouraging parties to agree would have been hampered if we adopted the dicta in Hay because parties would be less likely to reach agreements if they were more difficult to change later, and the added burden would only discourage parties from ever agreeing to pay more than absolutely necessary. Id.; see also Ind. Code § 31-15-2-17 ("To promote the amicable settlements of disputes that have arisen or may arise between the parties to a

5

marriage attendant upon the dissolution of their marriage, the parties may agree [to certain things] . . .").

A different panel of this court disagreed with the holding in Kraft, reasoning that Kraft had relied on a case from our supreme court that dealt with an outdated version of the relevant statute and that Kraft had disregarded a statement in a more recent supreme court case. Reinhart v. Reinhart, 938 N.E.2d 788, 793 n.2 (Ind. Ct. App. 2010). However, Kraft quoted the relevant sentence from the more recent case and so was clearly aware of it, and Kraft's reliance on the older case concentrated more on that case's focus on "the language of the statute as written." 868 N.E.2d at 1189. We therefore find the policy and statutory interpretation in Kraft persuasive and agree that "despite an agreement between the parents regarding child support, the child support order may be subsequently modified." Id. at 1188; see also Adams v. Adams, 873 N.E.2d 1094, 1098 (Ind. Ct. App. 2007) (agreeing with Kraft and holding that the appellant in that case "could show that he was entitled to a modification of child support by showing either changed circumstances so substantial and continuing as to make the terms unreasonable or a twenty percent deviation."). The fact that Sam agreed to pay more child support than calculated in the worksheet did not, therefore, estop him from later seeking modification under Indiana Code section 31-16-8-1(b)(2) where the amount he agreed to varied by more than twenty percent compared to the amount calculated in the child support worksheet.

Sam also argues that, although he filed his petition for modification less than twelve months after the order was issued, he nonetheless meets this prong because the hearing was

6

held more than twelve months after the order was issued. We disagree. Sam points to, and we find, no case law supporting this interpretation of the statute. Moreover, the plain language of the statute requires that the petition be <u>filed</u> at least twelve months after the order was issued and does not reference any date related to the hearing. Sam argues that the intent of the statute is to "ensure that modification is not being sought every few weeks and at the instance of every $1.00 hourly pay raise or spike in electric bill, for instance" and that the intent would be met here because by the time of the hearing nearly eighteen months had elapsed since the order was issued. Appellant's Brief at 10. First, we do not see how a late hearing date would ensure that modification was not being sought too frequently or for minor changes in a party's financial situation. Second, because the plain language of the statute is clear, we do not reach the issue of legislative intent. <u>Town of Plainfield v. Town of Avon</u>, 757 N.E.2d 705, 710 (Ind. Ct. App. 2001) ("It is only when the language of a statute is ambiguous and unclear that we will engage in statutory construction to determine the intent of the legislature to give effect and validity to each provision thereof. . . . Because the applicable statutes are clear and unambiguous, we do not need to look beyond the statutes for the legislative intent."), <u>trans. denied</u>. Because both prongs of the statute are required and Sam has failed to meet this second prong, we conclude that the trial court did not abuse its discretion in denying his petition on the basis of this subsection.

### III. Changed Circumstances

Sam next argues that, following the dissolution, there were several changes in circumstances supporting a modification of his child support obligation under subsection

(b)(1) of the statute. These circumstances include that G.B. began to stay with Sam approximately seventy percent of the time; Kelley did end up taking a lower paying job, but then ultimately returned to an administrative position at a yearly salary of $60,000; certain medical and educational expenses were not being divided as envisioned in the Agreement; and Sam had increased expenses and a changed financial situation.

As for increased parenting time, the record shows that G.B. was staying with Sam significantly more often than the Agreement contemplated at the time the petition to modify was filed, but that parenting time began to even out after the petition was filed. By the time of the hearing, G.B. could not remember the last time that the schedule had strayed from that in the Agreement, with the exception of vacation time. We agree with Kelley that changes need to be continuing in order to satisfy the statute, and here, it is clear that any changes in parenting time were not continuing at the time of the hearing. Barnes v. Barnes, 549 N.E.2d 61, 64 (Ind. Ct. App. 1990) ("Changed circumstances sufficient to warrant modification do not have to be permanent in nature, but only that the change is a continuing one."), trans. denied.

Sam's several financial arguments are intertwined. Sam testified to monthly expenses including $790 for his mortgage, $66 for his property insurance, $74 for his property taxes, $300 for Sarah's rent, $115 for Sarah's utilities, $107 for his and Sarah's combined car insurance, and $320 for gasoline, totaling approximately $1,772.[2] The record indicates that

---

[2] Sam's brief puts the monthly total for the above expenses at $3,322 and notes that the total does not include food or incidentals. It is not clear where the extra $1,550 in Sam's total is coming from. It is possible that as much as $1,084 of that is the monthly total of the child support for G.B., but even so, nearly $500 is unaccounted for.

8

Sam's monthly take-home pay is $3,942, so the above expenses, in addition to food, incidentals, and child support payments, support Sam's testimony that he is living at or below his means. The record is silent, however, as to Sam's expenses at the time of the dissolution. Again, going back to the language of the statute, Sam is required to show changed circumstances. He argues that these expenses are more than those at the time of the dissolution but does not indicate what his expenses were at the time of the dissolution, so it is impossible to say that any changes are substantial. As for medical and educational expenses for which Sam was not been reimbursed, we find that argument to be moot at this point because the trial court ordered Kelley to reimburse him for her portion of those expenses and they are therefore not a continuing changed circumstance warranting modification of child support.

Sam also argues that in the past his income was higher because of sales of stock options, but that those are no longer happening, resulting in a significant decrease in income. The record indicates that at the time of dissolution, his income was in the neighborhood of $30,000 above his base salary due to stock options. He testified that those options had not been available for the last couple of years, and we agree that a loss of income due to lost bonuses and the like may constitute substantial changed circumstances. Kraft, 868 N.E.2d at 1181. However, Sam also testified that he had received some income from stock options just that year, although he could not remember how much he had sold the stocks for. He also testified that he could potentially be eligible for a bonus in the amount of $8,000. While we might be inclined to agree that a potential bonus of $8,000 is substantially less than the

9

approximately $30,000 in additional income Sam saw in previous years, because the record does not clearly indicate that stock sales are no longer an option for Sam, we cannot conclude that this is a significant change from his financial situation at the time of dissolution.

What does appear to be a substantial and continuing change from the time of dissolution is the parties' relative incomes. Even if we assume that Sam's income has not greatly changed due to lost stock options, the record is clear that both Sam and Kelley expected Kelley's salary to decrease from $75,000 to around $40,000, and that Sam based his increased child support on that expectation. Kelley's salary in fact went down even lower than expected for some period of time, but by the hearing she was again in an administrative position with a salary of $60,000—less than she was earning at the time of dissolution, but more than Sam or Kelley had anticipated for her following dissolution. There was no indication at the hearing that she did not expect this position to continue. The difference in the parties' situations is highlighted when we compare Sam's child support obligations as calculated in the child support worksheet at the time of dissolution to that calculated around the time of the hearing. At the time of dissolution, his obligation was calculated to be $175. By the time of the hearing, his obligation was calculated to be $52. In MacLafferty, our supreme court indicated that the starting point in determining whether a change in income was substantial and rendered the original payment unreasonable would be to consider whether the change resulted in a payment difference of more than twenty percent. 829 N.E.2d at 942. Here, that benchmark has more than been met. While additional factors may increase the disparity between Sam's financial situation at the time of dissolution compared

10

to the time of the hearing, the record is too opaque for us to include those in our calculations.

However, we conclude that the difference in salaries is a substantial and continuing change that warrants modification of Sam's child support obligation.

Conclusion

Concluding that Sam presented substantial changed circumstances such that the trial court abused its discretion in denying his petition for modification of his child support obligation, we reverse and remand for proceedings consistent with this opinion.

Reversed and remanded.

RILEY, J., concurs.

KIRSCH, J., concurs in part and dissents in part with separate opinion.

11

# IN THE
# COURT OF APPEALS OF INDIANA

SAMUEL C. BOWYER,      )
             )
 Appellant-Respondent,    )
             )
    vs.        )  No.  18A02-1301-DR-88
             )
KELLEY S. BOWYER,      )
             )
 Appellee-Petitioner.     )

**KIRSCH, Judge,** *concurring in part and dissenting in part*.

I join my colleagues in holding that this matter should be reversed and remanded for a modification of support, but I respectfully dissent from their conclusion that the trial court did not abuse its discretion in denying the petition for modification on the basis that twelve months had not elapsed between the time the support order was entered and the petition for modification was filed.

I acknowledge that the plain language of Indiana Code section 31-16-8-1(2) requires that the petition be *filed* at least twelve months after the order. In this case, however, Mother did not object or file a motion to strike the premature filing. Indeed, she took no action to raise the issue until the hearing on the modification which was nearly eighteen months after the prior support order had been entered—well after the expiration of the statutory twelve month waiting period.

On the basis of these facts, I believe the trial court should have exercised its discretion

12

and deemed the petition for modification re-filed as of a date subsequent to the expiration of the twelve month period and, hence, timely. Doing so would not have contravened the rights of the parties or policies underlying the statutory twelve month waiting period, and it would have avoided the delay and expense that the parties and the trial court will necessarily incur in requiring Father to re-file his petition and conducting a subsequent proceeding based upon the same facts and raising the identical issues.