**Dennis Michael GLASS, Appellant (Respondent Below),**

v.

**Nancy Burdett OEDER, Appellee (Petitioner Below).**

No. 49S02-9909-CV-491.

Supreme Court of Indiana.

Sept. 23, 1999.

---

Jennifer L. Graham, Indianapolis, Indiana, Attorney for Appellant.

Michael J. Cheerva, Gale M. Phelps, Indianapolis, Indiana, Attorneys for Appellee.

## ON PETITION TO TRANSFER

BOEHM, Justice.

We hold that the business expenses of a self-employed parent are to be considered in calculating income for purposes of child support, and income from a wholly-owned subchapter S corporation is to be treated the same as income from a sole proprietorship. This case also discusses the handling of depreciation in a self-employed business, imputed income from a parent's other family sources, and potential income of an underemployed parent in determining income for child support calculations.

## Factual and Procedural Background

Approximately a year and a half after Dennis Glass and Nancy Oeder were divorced, Glass filed a petition to reduce his child support based on a claim of decreased income. Ultimately the court entered findings and conclusions, including that there was no substantial change in circumstance warranting a reduction in support. The trial court also ordered Glass to pay Oeder's attorney fees.

Glass appealed, arguing among other things that the finding that Glass had annual income of $72,696 was clearly erroneous. The Court of Appeals directed a remand to the trial court for calculations to support that finding. The trial court also found that Glass had income of $41,-600 in the form of wages from "Cook & Glass," a subchapter S corporation wholly owned by Glass. The total income attributed to Glass included the full $41,600 reported as salary from Cook & Glass, but did not include any offset for the $40,250 loss Cook & Glass reported for the same period. The trial court reasoned that "the business suffered the loss. Since Glass did not loan any money to the sub S corporation, [Glass] did not personally suffer the loss." In addition, the trial court noted that $18,025 of Cook & Glass's loss consisted of depreciation. The trial court concluded that because no new assets were acquired in the period, depreciation was a "paper loss" not recognizable for purposes of calculating income.

We grant Glass' petition to transfer and hold that (1) income of self-employed parents for child support purposes is calculated by subtracting ordinary and necessary business expenses from gross receipts; (2) the shareholder of a wholly-owned subchapter S corporation is to be treated the same as a self-employed person operating the business; (3) depreciation in a self-employed business is a proper expense, but the proper amount is highly fact sensitive; (4) imputed income may be attributed to a parent who has reduced-cost living arrangements whether by virtue of a

subsequent spouse's contributions to the household or other circumstances; and (5) potential income may be attributable to a voluntarily underemployed parent.

### Standard of Review

■ Modification of a child support order requires a showing of "changed circumstances so substantial and continuing as to make the terms unreasonable." IND. CODE § 31–16–8–1(1) (1998). *See also* Ind. Child Support Guideline 4 ("The provisions of a child support order may be modified only if there is a substantial and continuing change of circumstances."). Modification of a child support order "involves a factual determination that substantial and continuing, changed circumstances render existing terms unreasonable." *Giselbach v. Giselbach*, 481 N.E.2d 131, 133 (Ind.Ct. App.1985).

■ We review the trial court's ruling on this factual determination and other findings of fact under a clearly erroneous standard. *In re Marriage of Richardson*, 622 N.E.2d 178, 179 (Ind.1993). "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind.1997) (citation omitted). A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.*

### Determining Parents' Income for Child Support Purposes

The Indiana Child Support Guidelines require a trial court to determine the proper level of child support by calculating each parent's weekly gross income. Child Supp. G. 1. Weekly gross income is the sum of actual income, potential income if a parent is underemployed and imputed income based on "in kind" benefits. Child Supp. G. 3(A)(1); *see also In re the Matter of Paternity of C.L.H.*, 689 N.E.2d 456, 458 (Ind.Ct.App.1997). Courts are guided in determining the amount of each type of income by the Guidelines and their commentary.

### A. Salary from a Wholly–Owned Subchapter S Corporation

■ For many parents, actual income is relatively simple to determine. However, self-employed parents present unique challenges to a trial court's calculation of income. Accordingly, the Guidelines provide some specific directions. Weekly gross income for the self-employed is calculated by subtracting "ordinary and necessary expenses" from gross receipts and "may include a reasonable yearly deduction for necessary capital expenditures." Child Supp. G. 3(A)(2). This formula is required because "determining the profitability of the venture or operation paints a better picture of the spouse's financial wherewithal than would a mere toting up of any formal compensation or in-kind benefit." *McGinley–Ellis v. Ellis*, 638 N.E.2d 1249, 1252 (Ind.1994) (citation omitted).

■ Glass argues that the trial court erred when it failed to offset his business's expenses against the salary he received from it. Glass is the sole owner of Cook & Glass. Although the corporation is a separate legal entity, because subchapter S was elected, its income for purposes of federal and Indiana taxation is attributable to Glass. If no salary had been paid to Glass, the corporation's loss of $40,520 would have been a small profit. And if Glass operated the business as a sole proprietorship rather than a wholly-owned subchapter S corporation, the act of paying himself a salary would have generated no income distinct from the profit of the proprietorship. Rather it would have been simply a withdrawal of capital from the business. Otherwise stated, by paying himself a salary from Cook & Glass, Glass did not increase his net worth at all; he simply moved that amount from one form to another. For these reasons it is improper to treat the salary from Cook & Glass as income unless the profit or loss, net after that salary, is also attributed to the sole shareholder. We do not address whether the same considerations apply to a corpo-

ration not electing to be taxed under subchapter S, or a less than wholly-owned corporation.

### B. *Depreciation*

■ Depreciation presents a different issue. The trial court was correct in noting that depreciation, although properly calculated for tax purposes, may be overstated for purposes of determining income to measure child support. In general, we would assume that allowable depreciation under methods designed to encourage investment may be overstated for child support purposes. It does not follow, however, ·that capital must be infused into the business at the same rate in a given financial period to make the depreciation allowable. Some major capital items (a new roof, etc.,) occur infrequently and irregularly. Some types of machinery replacement may be more frequent and predictable. The current Guidelines recognize that these irregular events should not create fluctuations in support levels, but are nonetheless properly considered in measuring the income of a self-employed person. The trial court has broad discretion, but should have as a goal the direction of Guideline 3(A)(2) to measure "a reasonable yearly deduction for necessary capital expenditures." This anticipates smoothing the year to year impact of capital outlays by allowing for a reasonable accrual-like process for anticipated capital expenditures but does not allow depreciation as such.

### C. *Imputed Income from Family Support*

■ Glass lives alone in his deceased father's house which is now owned in a trust whose beneficiaries are Glass and his siblings. His sister is the trustee. The house sits on a lake and Glass's siblings use the lake and the house at their discretion. Glass argues that the trial court's finding that he received $18,000 in imputed income by living in his family home without paying rent is not supported by the evidence. The Guidelines state that "regular and continuing payments made by a family member, subsequent spouse, roommate or live-in friend that reduce the parent's costs for rent, utilities, or groceries, should be the basis for imputing income." Child Supp. G. 3(A) Commentary 2(e).

Glass' rent-free living arrangement provides him with a lower living cost that presumably frees up money for the support of his children and was a proper basis for the trial court to impute income. The trial court's apparent implicit finding[1] that Glass received $1,500 per month of imputed income as a result of this living arrangement seems reasonable based on the description of the house. Although there appears to be no evidence from either party of the actual value of this house or the cost of renting a similar home, the general description of the house provided by Glass and Oeder is sufficient that the finding cannot be said to be clearly erroneous.

■ Glass also argues that Oeder has imputed income from her spouse's contributions to their household. As with Glass' living arrangement, the contribution Oeder's spouse makes to their home presumably frees up money for the support of her children and is a proper fact that may be considered in calculating her income. *See Gilpin v. Gilpin*, 664 N.E.2d 766, 767 (Ind. Ct.App.1996). Once again, however, the trial court found no imputed income from Oeder's spouse after balancing these factors and others including the reduced mortgage payment generated by Oeder's capital infusion to purchase the house.

---

1. The trial court found that Glass had a total income of $72,686. It found that he had $44,779 in income as reported on his 1996 tax return and $9,907 in benefits through his business. Although there is no amount expressly attributed to imputed income from his living arrangement, we infer that the trial court attributed $18,000 per year or $1,500 per month. ($72,686 − $44,779 − $9,907 = $18,000). If this inference is incorrect, the trial court can correct it on remand.

We cannot say that the sum of these findings was clearly erroneous.

### D. *Potential Income*

 Finally, Glass argues that the trial court ignored the fact that Oeder works less than twenty hours per week as evidence of potential income and thus erred in finding that Oeder's income was $81 per week. In 1996, Oeder earned an average of $139 per week for an average 16.4 hour week. In 1997, that fell to an average of $87 for an average 10.4 hour week. The Guidelines provide that a trial court may include a parent's potential income in weekly gross income if a parent is capable of earning more. Child Supp. G. 3A Commentary 2(c). One purpose of attributing potential income to a parent is "to fairly allocate the support obligation when one parent remarries and, because of the income of the new spouse, chooses not be employed." Child Supp. G. 3(A) Commentary 2(c); *Ullery v. Ullery*, 605 N.E.2d 214, 215 (Ind.Ct.App.1992). Moreover, the Commentary to the Guidelines suggests that "[t]he marriage of a parent to a spouse with sufficient affluence to obviate the necessity for the parent to work may give rise to a situation where either potential income or imputed income or both should be considered in arriving at gross income." Child Supp. G. 3(A) Commentary 2(e). At the same time, the Guidelines caution that the trial court must employ "a great deal of discretion" in its potential income determination. Child Supp. G. 3(A) Commentary 2(c). "[D]iscretion must be exercised on an individual case basis to determine if it is fair under the circumstances to attribute potential income to a particular nonworking or underemployed custodial parent." Child Supp. G. 3(A) Commentary 2(d).

Although a parent's choice not to work over twenty hours is to be respected by the courts, the marriage of a parent to a spouse with sufficient affluence to obviate the necessity for the parent to work may give rise to a situation where the court should consider "either potential income or imputed income or both." Child Supp. G. 3(A) Commentary 2(e). Nonetheless, the Guidelines require a trial court to include potential income only where a parent is "voluntarily underemployed." Child Supp. G. 3(A)(3).

Here the trial court found that Oeder was not underemployed. Concl. of Law 6. This conclusion is supported by the trial court's finding that Oeder's "income was not decreased as a result of her" remarriage and that Oeder is "earning more now than she has at any time since the birth of Robert [17 years ago]." Child Supp. Finding of Fact 11. *See also* General Findings of Fact 20 (Oeder "is currently employed part-time at the Indiana Eye Clinic as a medical assistant.... She works as many hours as are available for this job. [She] still suffers from back pain and migraine headaches. [She] has never held a 40 hour full-time job since the birth of Robert 17 years ago....)." Based on these findings, we cannot concluded that the trial court's resolution was clearly erroneous.

 Glass also contends that Oeder intentionally deprived herself of income by purchasing a house with the proceeds of a sale of stock that would have otherwise produced investment income. The trial court refused to include in Oeder's income the proceeds from the sale of assets she liquidated to purchase a home, or any imputed income from lost investment assets. The theory Glass advances may be correct in some cases, but it is highly fact sensitive whether the use of financial assets to purchase a non-income producing asset is merely an appropriate step to maintain a family's standard of living or represents a distortion of income potential requiring adjustment by the trial court. We cannot conclude that the trial court's resolution was clearly erroneous.

### Conclusion

In sum, when calculating income for purposes of child support, courts are cautioned to pay special attention to the re-

quirements of the Guidelines when identifying actual, potential and imputed income. The judgment of the trial court is affirmed in part, reversed in part. The decision of the Court of Appeals with respect to the attorney fees issue is summarily affirmed. Ind. Appellate Rule 11(B)(3). This case is remanded for proceedings not inconsistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.