**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**
May 09 2014, 6:36 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**BRIAN S. MOORE**
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**JONATHAN R. DEENIK**
Cross, Pennamped, Woolsey & Glazier, P.C.
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| BRIAN S. MOORE, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1308-DR-401 |
| | ) | |
| KRISTY L. MOORE, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Robert R. Altice, Jr., Judge
Cause No. 49D05-0810-DR-44790

**May 9, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Father, pro se, appeals an order modifying custody and support. He presents a number of issues, which we consolidate and restate as follows:

1. Did the trial court err by modifying the existing custody order?

2. Did the trial court abuse its discretion when it imputed income to Father?

3. Did the trial court err by granting Maternal Grandmother unrestricted access to the children?

4. Does the portion of the order addressing extra-curricular activities need clarification?

We affirm in part, reverse in part, and remand.

Mother and Father's thirteen-year marriage was dissolved in December 2009, with all matters settled by agreement. With respect to their two children,[1] the parties agreed to joint legal and physical custody. Father did not have equal parenting time with the children, but the parties agreed to work toward that with their parenting coordinator, Dr. John Ehrmann.[2] The parties agreed to follow Dr. Ehrmann's guidance regarding the process of increasing Father's parenting time and to submit to Dr. Ehrmann any disputes relating to legal custody matters. The agreement, however, expressly provided that neither parent waived the right to present any "reasonable dispute" to the court if they are "unwilling or unable to follow Dr. Ehrmann's direction because they do not believe it is in the Children's best interests". *Appellant's Appendix* at 43.

At all relevant times, Father remained in the marital residence in Indianapolis, and

---

[1] Born August 20, 2004 and July 17, 2006.

[2] They needed Dr. Ehrmann's assistance due to substantial disagreements regarding what was in their children's best interests.

2

Mother lived in Pendleton, which was about thirty minutes away. The parties enrolled the children in Cornerstone Baptist Academy, a private school on the northeast side of Indianapolis, for the 2010-2011 academic year. The school's location was convenient for both parents, as Mother worked nearby as an IPS teacher. The parties agreed to share the cost of the private education, but Father fell behind on his share.

Shortly after the dissolution, in the summer of 2010, Father ceased making child support payments. Father also had a period of about eight months in 2010 when he was not on speaking terms with Dr. Ehrmann and refused to pay the parenting coordinator's fees. Dr. Ehrmann would not continue working with them until Father brought the balance current. As a result, Mother filed a petition to modify custody on July 21, 2010, seeking sole legal and physical custody.[3] After a change of judge, the parties were ordered to mediation, which proved unsuccessful.

On April 14, 2011, Mother filed a motion for rule to show cause based upon Father's non-payment of support and his share of medical expenses. All pending matters were set for hearing on September 19, 2011. In the meantime, Father's conflict with Dr. Ehrmann temporarily subsided by the end of 2010, and his parenting time was stepped up to about equal time by July 2011.

---

[3] In the petition, Mother noted among other things: "Without the intervention and recommendations of the P.C. the parties lack the specificity and clarity regarding parenting time orders necessary to resolve their on-going disputes. There is now significant conflict between the parties as it relates to the minor children and Father's parenting time." *Id*. at 56.

3

Shortly before the scheduled hearing, Father filed a pro-se petition seeking modification of the existing custody and support order, along with a motion for rule to show cause. Among other things, Father sought modification of the order to reflect their equal parenting time, addition of language requiring the children to remain in a school agreed upon by the parties, and modification of support based upon "current income levels and equal parenting time." *Id.* at 65. Father asked the court to order that Maternal Grandmother[4] not be permitted to "watch the children for a period of more than approximately 10 minutes unless another adult is present constantly." *Id.* at 65-66.

An evidentiary hearing was held on September 19, 2011, regarding all pending matters. Mother argued that she should have legal and physical custody of the children. She testified regarding the condition of Father's home, his volatile and inflexible nature, the difficulties with the parenting coordinator, her desire to enroll the children in public school, Father's lack of stable income, and Father's non-payment of support. Father acknowledged that he had a substantial arrearage. Father indicated that he had worked "very little" since the divorce and had spent $85,000 in attorney fees. *Transcript from Court Room 12* at 115. He stated that he had lacked motivation to work and that the construction market had declined, resulting in no income in 2010 and only a few small remodeling jobs in 2011.[5] Father testified that he was able to stay in his home because his mother purchased it after the

---

[4] Father alleged that Maternal Grandmother had psychologically abused both children, physically abused one of the children, and sought medical treatment for both children without parental consent.

[5] Father has an undergraduate degree from Butler and a MBA from Indiana University. He has worked as an independent contractor, however, since before the marriage.

4

dissolution and "she's not demanding payments right now." *Id*. at 117. Father's mother also helped him with other expenses.

At the end of the September 2011 hearing, the trial court concluded that neither party had presented sufficient evidence for the court to "turn upside down a five and seven year old's lives and determine where they're going to go to school and where they're going to move to." *Id*. at 166. The court continued:

> But I can tell you I have some significant concerns about what's going on in these kids' lives. I have concerns about the living arrangements that are taking place at Father's residence. I have a concern about the distance between where these parties live. I have great concern about the fact that Father has not had any stable employment since 2008[6] and that private school is not a realistic option; they cannot afford it. Their inability to communicate causes me concerns. I want to appoint a Guardian ad Litem and I want to have the Domestic Counseling Relations Bureau do an evaluation.

*Id*. Accordingly, the trial court continued the hearing.

The trial court conducted a brief hearing on June 13, 2012 regarding summer parenting time and vaccinations. At this hearing, Father testified that he had been employed to maintain an office building and worked twenty to over forty hours per week. He also had other independent jobs as a contractor. Being a teacher, Mother did not work during the summer. Accordingly, the parties and the court agreed that Father would offer Mother additional parenting time while he was working. With respect to vaccinations, the court ordered that Mother and Father alternate taking the children to the doctor each year, with Mother starting in 2012.

---

6 The court noted that in its view, Father had "not made really any effort to get a job and to be employed." *Id*. at 167.

5

Another interim hearing took place on August 22, 2012 regarding which school the children would attend. Father wanted the children to continue at Cornerstone, and Mother had recently enrolled them in a public school in Pendleton. Mother testified that in addition to not being affordable, she had been transferred to another IPS school that was not near Cornerstone. The GAL testified that, based upon financial considerations and location, the children should attend Pendleton Elementary. At the conclusion of the hearing, the court reprimanded the parents for their continued inability to communicate and then found Mother in contempt for enrolling the children in Pendleton Elementary before the hearing. The court took the matter of punishment under advisement.[7] Finally, the court ordered that the children attend Pendleton Elementary, which necessitated a modification of parenting time. The court ordered that Father have the children every weekend from Friday after school until he dropped them off at school Monday morning. Father also had the children overnight on alternating Mondays.

The previously continued evidentiary hearing, which began in September 2011, recommenced on February 5, 2013, after the custody evaluation and the GAL's report had been filed with the court. The custody evaluator, Robin Pannell, testified regarding Father's obsessive compulsive and narcissistic personality disorders and their effect on his ability to co-parent. Pannell opined that joint legal and physical custody was not workable and recommended that Mother have custody with Father having parenting time pursuant to the Indiana Parenting Time Guidelines (the Guidelines). In his report, the GAL made the same

_____

[7] At a subsequent hearing, Father agreed that Mother should not be punished for this contempt.

6

recommendation. During the GAL's testimony, the hearing was continued.

The trial judge, Heather Welch, sua sponte disqualified and recused herself from the case on February 8, 2013. The reason for this action is not apparent on the record before us. The case was promptly transferred to Robert Altice, Jr., as special judge.

The final day of this lengthy modification hearing was April 5, 2013. Several witnesses were called, including Father. During his testimony, Father indicated that he liked the current physical custody arrangement, as set out in the August 2012 order. Father proposed, however, that the court modify the custody arrangement and grant Mother one weekend a month (instead of him having every weekend during the school year). With respect to his weekly gross income, Father testified that $100 was the "best [figure] he could come up with right now". *Transcript from Court Room Five* at 216. Father presented no evidence in support of his "best guess[]". *Id.* Eight months earlier at the August 2012 hearing, however, Father testified that he was making between $400 and $500 per week.

After the hearing, both parties filed proposed findings with the court. Mother sought legal and physical custody of the children with Father receiving parenting time pursuant to the Guidelines. Father argued, on the other hand, that joint physical and legal custody should continue with a modification of parenting time. Pursuant to his proposed modification, Father would have the children during the school year for three weekends per month (from Friday evening until Monday morning) and overnight on the Monday following Mother's weekend.

The trial court issued its order on June 6, 2013, denying Mother's request for sole

physical and legal custody. The court modified parenting time during the school year as follows: "Father shall have the children every weekend except one during the month, from Friday at 6:00 o'clock p.m. until Sunday at 6:00 o'clock p.m. … Father shall also have the children for a mid-week parenting time each week consisting of no more than four hours." *Appellant's Appendix* at 25. Among other things, the court ordered that the maternal grandmother could care for the children without restriction, Father was under-employed and capable of earing at least $961.54 per week, and Father was in contempt for failing to pay over $10,000 in child support. Relevant to this appeal, the order also provided that Mother and Father "shall share equally in extracurricular activities" and that Mother would be responsible for providing healthcare and Father could no longer attend medical appointments with her and the children. *Id.* at 27. After an unsuccessful motion to correct error, Father now appeals. Additional information will be provided below as needed.

Father appeals from a decision in which the trial court issued an order with only limited findings of fact. Although Father made an oral request for specific findings, this request came mid-way through the modification hearing and he did not file a written request. "Accordingly, we review the special findings and conclusions as if they were issued sua sponte by the trial court." *Leever v. Leever*, 919 N.E.2d 118, 122 (Ind. Ct. App. 2009). *See also* Ind. Trial Rule 52(A) (requiring requests for special findings to be written and filed with the trial court prior to the admission of evidence).

Where the court has made special findings, we employ a two-step standard of review. *Leever v. Leever*, 919 N.E.2d 118. We determine whether the evidence supports the findings

8

and then whether the findings support the judgment. *Id.* In this regard, we consider only the evidence and reasonable inferences most favorable to the judgment, without reweighing the evidence or assessing witness credibility. *Id.* When the trial court enters findings sua sponte, however, the specific findings control only as to the issues they cover. *Id.* "A general judgment standard applies to any issue upon which the trial court has not made a finding and may be affirmed upon any legal theory supported by the evidence." *Id.* at 122.[8]

1.

Father argues that the order effectively granted sole legal and physical custody to Mother, despite an express finding by the trial court that such was not warranted. He also appears to contend that once the court denied Mother's request for sole custody, the court was precluded from modifying parenting time or any other provisions of the custody order.

Our legislature has defined the circumstances under which a custody order may be modified:

> (a) The court may not modify a child custody order unless:
>     (1) the modification is in the best interests of the child; and
>     (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8….
> (b) In making its determination, the court shall consider the factors listed under section 8 of this chapter….

Ind. Code Ann. § 31-17-2-21 (West, Westlaw current through P.L.29 of the 2nd Reg. Sess. of the 118th General Assembly (2014) with effective dates through March 13, 2014). The factors to be considered by the trial court include, but are not limited to, the following:

---

[8] Much of Father's appellate argument is based upon his incorrect belief that the trial court was required to issue specific findings to support every aspect of its decision.

(1) The age and sex of the child.
(2) The wishes of the child's parent or parents.
(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
(4) The interaction and interrelationship of the child with:
      (A) the child's parent or parents;
      (B) the child's sibling; and
      (C) any other person who may significantly affect the child's best interests.
(5) The child's adjustment to the child's:
      (A) home;
      (B) school; and
      (C) community.
(6) The mental and physical health of all individuals involved….

I.C. § 31-17-2-8 (West, Westlaw current through P.L.29 of the 2nd Reg. Sess. of the 118th General Assembly (2014) with effective dates through March 13, 2014).  Although the trial court is required to consider the statutory factors, the court is not required, absent a proper request by a party, to make special findings regarding the substantial changes in the parties' circumstances.  *In re Paternity of J.T.*, 988 N.E.2d 398 (Ind. Ct. App. 2013).

We initially observe that the parties incorrectly interpret the trial court's order as concluding that no substantial change in circumstances existed.  The order provides:

> 26.     The Court has considered the relevant statutory factors and case law, has considered the evidence and testimony of parties, as well as the reports and recommendations of the Domestic Relations Counseling Bureau and the GAL.  The Court has specifically considered the best interests of the children.  Father maintains Mother has failed to carry her burden of showing there is a substantial change in circumstances which warrants modification.  This Court agrees.  *That is, to the extent that Mother requests sole physical and legal custody of the parties' minor children.*  This Court hereby denies that request.
> 27.     However, based on the evidence presented to this Court, the Court does make the following modifications, which it believes to be in the best interest of the children.

*Appellant's Appendix* at 24 (emphasis supplied). Although the order certainly could have been more carefully crafted, we read it to mean that the trial court found there were substantial changed circumstances but that the changes did not warrant transferring sole custody to Mother and limiting Father's parenting time to that set out in the Guidelines. Accordingly, the court made less drastic modifications that it felt were warranted and in the best interests of the children.[9]

With respect to physical custody, the trial court modified Father's parenting time during the school year to an amount less than what Father was seeking yet more than the amount sought by Mother. As set forth above, Father agreed to a modification of his parenting time from every weekend during the school year to three weekends per month with a Monday overnight on Mother's weekend. Mother sought sole custody and parenting time for Father according to the Guidelines, which would give Father two weekends per month and mid-week parenting time each week for four hours. *See* Ind. Parenting Time Guideline § II(B)(1). The trial court granted Father the three weekends per month that he was seeking, but changed the return time to Sunday evenings rather than Monday mornings. Further, instead of the one mid-week overnight that Father sought, the court granted him weekly mid-week parenting time as set out in the Guidelines.

To be sure, the modification resulted in a reduction of overnights enjoyed by Father,

---

[9] We also note that Mother and Father both sought modification and therefore, in effect, agreed that there had been a substantial change in circumstances but disagreed as to what type and degree of modification was in the best interests of the children. Moreover, the record undoubtedly establishes substantial changed circumstances. To name a few, the parenting coordinator was no longer involved with the family, Mother and Father were not communicating well, it had been nearly four years since the original custody agreement, and the children were now both school age and attending elementary school near Mother's home.

11

but Father has not established that that the trial court abused its discretion in this regard. *See K.I. v. J.H.*, 903 N.E.2d 453, 457 (Ind. 2009) (we review for an abuse of discretion with a "preference for granting latitude and deference to our trial judges in family law matters") (quoting *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002)). The record establishes that the children attend school near Mother's home and at least thirty minutes from Father's home. Having the children overnight with Mother each school night results in less travel time on school mornings and provides consistency. Moreover, the GAL and the custody evaluator recommended reduced parenting time for Father. In light of the record before us, we cannot say that the trial court abused its discretion by finding that the modification of parenting time was in the children's best interests.

We now turn to the issue of legal custody. Despite a history of significant discord between Mother and Father, the trial court determined that joint custody was still feasible. Mother does not appeal this determination. Father, on the other hand, complains that the trial court abused its discretion by giving Mother sole responsibility for taking the children to medical appointments. Contrary to Father's belief, the trial court's denial of Mother's request for sole legal custody did not preclude the court from modifying the custody order in this regard. There is evidence in the record indicating that Father has caused problems in the past when attending doctor appointments with Mother and the children. We acknowledge that the evidence in this regard was limited and conflicting, but our task is not to reweigh the evidence on appeal. Further, the GAL specifically recommended that Mother have the sole responsibility for providing healthcare for the children. Under the circumstances, the trial

court did not abuse its discretion by determining that this modification was in the children's best interests.

2.

Father contends that the trial court erred by imputing income to him for child support purposes in the amount of $50,000 per year. He claims the evidence does not support this amount. We agree.

The Indiana Child Support Guidelines require a trial court to determine the proper level of child support by calculating each parent's weekly gross income, which is broadly defined to include actual income, potential income if a parent is under-employed, and imputed income based on in kind benefits. *Glass v. Oeder*, 716 N.E.2d 413 (Ind. 1999). Imputed income may include "regular and continuing payments made by a family member…that reduce the parent's costs for rent, utilities, or groceries". Ind. Child Support Guideline 3(A) Commentary 6(d).

With respect to Father's income, the trial court made the following findings:

36. Father is a "general contractor" who is doing work for Woodridge. Father testified that he works between 20-40 hours per week and that he can control his schedule. Father failed to tender any evidence regarding his pay from Woodridge. Father refused to provide any pay information to the GAL.
37. Father receives money from his Mother each month; he estimated the sum to be around $1,000.00.
38. Father testified that he would be able to earn $50,000.00 per year, but for the preparation of his case in this cause.
39. The Court concludes that Father is purposefully under-employed and is capable of earning at least $961.54 per week. Father's request that the Court use $100 per week as his income is unreasonable and the Court does not find Father's testimony credible that he only earns $100 per week.

*Appellant's Appendix* at 25-26.

13

The original settlement agreement set Father's weekly income at $428 per week. Further, eight months before the final day of the underlying evidentiary hearing, Father testified that he was earning between $400 and $500 per week. Father's subsequent undocumented and self-serving claim that his weekly income was now only $100 was prudently rejected by the trial court. The record establishes that Father was underemployed and/or not reporting his full income. Further, the regular support Father received from his mother could be properly imputed as income. *See Glass v. Oeder*, 716 N.E.2d at 417 ("Glass' rent-free living arrangement provides him with a lower living cost that presumably frees up money for the support of his children and was a proper basis for the trial court to impute income").

The trial court determined that Father was capable of earning $50,000 per year. This finding is not supported by the evidence and is clearly erroneous. When asked by Mother's counsel if he was capable of earning $50,000 a year, Father testified that he had never made that much in his current field, which he had been in throughout the marriage and thereafter. At the time of dissolution, the parties agreed that Father was earning about $22,200 per year. Nothing in the record indicates that Father's income potential improved, let alone more than doubled, since the dissolution.

On remand, the trial court is directed to reconsider Father's weekly income and child support obligation. This may be done by returning to the original income figure of $428 per week based upon Father's failure to establish different income figures, or the court may find that an increase is warranted based upon the regular and continuing support Father receives

14

from his mother. Once Father's gross weekly income is determined, the trial court shall recalculate Father's support obligation accordingly.[10]

3.

Father next challenges the trial court's decision to allow Maternal Grandmother to care for the children without restriction. The settlement agreement provided: "[M]other will not use [Maternal Grandmother] as a childcare provider except if there is no other reasonable choice available". *Appellant's Appendix* at 45. This provision was originally included in the 2009 agreement due to acrimony between Father and Maternal Grandmother. In his November 2012 report to the trial court, the GAL recommended that the court lift the restriction. The GAL testified at the November 2013 hearing that he made this recommendation because he did not think the restriction was necessary or that Maternal Grandmother was a danger to the children. In light of the GAL's recommendation, we conclude that the modification was supported by the evidence and not an abuse of the trial court's broad discretion.

4.

Finally, Father contends that the provision regarding extra-curricular activities requires clarification. The order provides: "The parties shall share equally in extracurricular activities for the children." *Id*. at 26. Father claims it is unclear whether this provision

---

[10] Father's pro se argument that "he was entitled to a retroactive modification of his child support payment obligation to reflect his actual parenting time and income" is difficult to understand and not supported by cogent argument. *Appellant's Brief* at 48. Further, the one case cited by Father, *Hicks v. Smith*, 919 N.E.2d 1169 (Ind. Ct. App. 2010), is inapposite.

15

"pertains to selecting activities, paying for activities, providing transportation for the children to activities, or directly participate [sic] in the activities as parent volunteers." *Appellant's Brief* at 16.

It appears clear to us that this provision is intended to address only the expenses associated with the children's extracurricular activities. Given the contentious nature of these proceedings, however, it may be prudent for the trial court to provide clarification to the parties on remand.

Judgment affirmed in part, reversed in part, and remanded with instructions.

MATHIAS, J., and PYLE, J., concur.