# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**TERRY A. WHITE**
Olsen & White, LLP
Evansville, Indiana

ATTORNEY FOR APPELLEE:

**KATHARINE VANOST JONES**
Evansville, Indiana

FILED
Jul 22 2014, 8:57 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARK ROLLEY, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No.  87A01-1307-DR-330 |
| | ) | |
| MELISSA ROLLEY, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE WARRICK SUPERIOR COURT
The Honorable Robert R. Aylsworth, Judge
Cause No. 87D02-1110-DR-1398

**July 22, 2014**

**OPINION – FOR PUBLICATION**

**PYLE, Judge**

Mark Rolley ("Father") appeals the trial court's grant of Melissa Rolley's ("Mother") petition to modify child support.

We affirm.

ISSUE

Whether the trial court abused its discretion in granting Mother's petition to modify child support because the amount of Father's child support deviated by more than twenty percent from the Child Support Guidelines.

FACTS

Mother and Father (collectively, "the Parents") married on August 10, 1996. They had one child together, M.R., who was born in 1997. On September 19, 2011, when M.R. was around fourteen years old, Father filed a petition for dissolution of his marriage to Mother. Subsequently, on November 1, 2011, Mother and Father filed a written settlement agreement with the trial court that included provisions regarding child custody and support. The trial court approved the agreement on November 22, 2011.

Pursuant to the terms of the settlement agreement, the Parents shared joint legal custody, with Mother having primary physical custody and Father having parenting time on alternating weekends and one evening during the week. The Parents also agreed that Father would pay $350 per week in child support; maintain medical and dental insurance for M.R.; and pay for M.R.'s extracurricular activities, parochial school expenses through secondary school, college tuition and expenses, and any remaining medical, dental, hospital, or optometric expenses not covered by insurance. The Parents also acknowledged that Father's weekly $350 child support payment was "not based upon the

2

Indiana Child Support Guidelines but [was] a sum that each believe[d was] fair and equitable under the [] circumstances." (App. 19).

Around ten months later, on August 17, 2012, Mother filed a motion for relief from judgment and a petition to modify child support, arguing that since the entry of the settlement agreement, she had learned that Father's income was much greater than she had previously been told. She asked the trial court to modify Father's child support obligations because, in light of his higher income, the $350 he was required to pay was not reasonable. On November 16, 2012, Father responded by filing a motion to dismiss Mother's motion for relief from judgment, arguing that Mother's claims were frivolous, vexatious, and in bad faith.

Subsequently, on January 16, 2013, the trial court entered an order with findings of fact and conclusions thereon regarding Mother's motion for relief from judgment and petition for modification of child support and Father's motion to dismiss. It found that Mother had signed past IRS statements and, accordingly, knew Father's income. The trial court also noted that Father had submitted evidence of an e-mail communication between Mother and her attorney in which Mother stated that she had gone over several financial items with Father before agreeing to the terms of the settlement agreement. Based on these factors, the trial court granted Father's motion to dismiss Mother's motion for relief from judgment.

With respect to Mother's petition for modification of child support, the trial court concluded that, because it was only ten months after the Parents had signed the settlement agreement, Mother would have to prove that there were "changed circumstances so

3

substantial and continuing as to make the terms of the prior support order unreasonable" in order for the court to grant her petition. (App. 55). However, the trial court also noted that if Mother moved to dismiss her petition to modify support without prejudice, she could then re-file a petition and attempt to prove under INDIANA CODE § 31-16-8-1(b)(2) that the amount of child support differed by more than twenty percent from the amount that would be ordered under the Child Support Guidelines.

That same day, on January 16, 2013, Mother moved to dismiss her petition without prejudice, and the trial court granted the motion. Mother then filed another petition to modify child support. In her petition, she argued that it had been over twelve months since the last support order and that there was more than a twenty percent difference between the amount of support Father was required to provide under the order and the amount he would be required to pay under the Child Support Guidelines. She also alleged that "this change [was] so substantial and continuing that the prior [o]rder of the [c]ourt, as amended, is no longer reasonable under the circumstances." (App. 58).

At the time of Mother's petition, Father was the owner of a subchapter S corporation, Advanced Network Computer Services. According to his tax statements, his adjusted gross income for 2010 was $1,135,559, which amounted to $21,838 per week; and his adjusted gross income for 2011 was $1,338,827, which amounted to $25,747 per week. During the same time period, Mother was a student and worked part time, earning approximately $290 per week.

On May 23, 2013, Father filed a motion to dismiss Mother's petition to modify child support, and on May 28, 2013, the trial court held a hearing on both Mother's

4

petition to modify and Father's motion to dismiss. At the time of the hearing, Father had not yet filed his 2012 taxes. However, Father later established that his 2012 income was $1,113,100, or $21,406 per week, and the trial court based its child support calculations on these amounts.

On July 23, 2013, the trial court granted Mother's petition to modify child support and ordered Father to pay $1,419 per week. The trial court found that modification was necessary because Father's $350 payment requirements were "vastly" less than the amount he owed Mother under the Child Support Guidelines. (App. 14). In addition to modifying Father's support requirements, the trial court also modified Mother's support obligations to require her to pay the first $4,807 per year of M.R.'s uninsured healthcare expenses, as well as 1% of any expenses thereafter. Father now appeals the trial court's order. We will provide additional facts as necessary.

## DECISION

On appeal, Father argues that the trial court erred in granting Mother's petition for modification of child support. Specifically, Father first argues that Mother invited the error of receiving less child support than she would have under the Child Support Guidelines when she knowingly agreed to the terms of her settlement agreement with Father. In the past, this Court has held that under such circumstances, where a parent has agreed to support terms pursuant to an agreement, that parent must later show a substantial change in circumstances warranting a modification before the trial court may modify the support. *See Reinhart v. Reinhart*, 938 N.E.2d 788 (Ind. Ct. App. 2010). Father points to this precedent to support an argument that, since Mother invited her error

5

by entering into a settlement agreement, she was required to show that there was a substantial change in circumstances justifying a modification. According to Father, Mother failed to do so. Additionally, Father also argues that the trial court's modification was not appropriate because Mother admitted that his weekly $350 support payments were enough to cover the cost of raising M.S. We will address each of these arguments in turn.

First, however, we must note that when we review a modification of child support, we will affirm the trial court's judgment unless it is clearly erroneous. *Weiss v. Frick*, 693 N.E.2d 588, 590 (Ind. Ct. App. 1998), *trans. denied.* A judgment is clearly erroneous only if it is clearly against the logic and effect of the facts and circumstances before the court. *Id.* When a trial court has entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A), as the trial court did here, we must assess whether the trial court's findings are sufficient to support its conclusion. *Id.* We will first determine whether the evidence supports the findings and, second, whether the findings support the judgment. *Id.* In doing so, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will neither reweigh the evidence nor assess witness credibility. *Id.*

1. Invited Error

INDIANA CODE § 31-16-8-1 governs the modification of child support and establishes two grounds for a modification. It provides that:

> (b) . . . modification may be made only:
>     (1) upon a showing of changed circumstances so substantial and
>     continuing as to make the terms unreasonable; or

6

(2) upon a showing that:
>   (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and
>   (B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

As stated above, while Indiana courts have acknowledged that subsections (1) and (2) of section 31-16-8-1 provide independent grounds for a modification, certain precedent has created an exception for circumstances where a support order is based on an agreement between the parties.[1] *See Reinhart* 938 N.E.2d at 792. In such circumstances, we have held that proving the grounds listed in subsection (2)—that a support order deviates by more than twenty percent (20%) from the Child Support Guidelines and that more than twelve months have passed since the order was issued—may not be sufficient. *See id.* Instead, a petitioner who seeks to modify a support order based on a support agreement may also have to make a showing under subsection (1)—that there are "changed circumstances so substantial and continuing as to make the terms unreasonable." *See id.* Based on this precedent, Father claims that Mother was likewise required to show a substantial change in circumstances and failed to do so.

In spite of the precedent that Father cites, other panels of this Court have reached the opposite conclusion, holding that a support order based on a support agreement may be modified based on a showing of the grounds listed in subsection (2) alone. *See Marriage of Kraft*, 868 N.E.2d 1181 (Ind. Ct. App. 2007). In light of this split in

---

[1] For purposes of clarity, we will refer to INDIANA CODE § 31-16-8-1(b)(1) as "subsection 1" and INDIANA CODE § 31-16-8-1(b)(2) as "subsection 2."

7

authority, we will analyze the evolution of Indiana precedent in order to address Father's arguments. Ultimately, based on our analysis of the plain language of the child support modification statute; our recognition that the law governing child support agreements differs from that governing other contractual agreements; and our recognition that our ultimate concern in the modification of child support is the child's well-being, we conclude that the trial court did not err in granting Mother's petition to modify Father's child support obligations.

The foundational case underlying Father's argument is *Hay v. Hay*, 730 N.E.2d 787 (Ind. Ct. App. 2000). In *Hay*, Terry Hay ("Terry") and his wife, Dinah Hay ("Dinah") entered into a settlement agreement concerning child support as part of the dissolution of their marriage. *Id.* at 790-91. Under the agreement, Terry was required to, among other provisions, pay for his children's college education expenses. *Id.* at 791. However, when his daughter later expressed her intention to actually enroll in college, Terry filed a petition to modify his child support obligations, alleging that there had been a substantial change in circumstances because he could not have known what his daughter's actual school costs would be until she enrolled. *Id.* The trial court denied Terry's petition. *Id.*

On appeal, Terry again argued that there had been a substantial change in circumstances justifying a modification of the child support order. *Id.* at 793. He also cited subsection (2) of INDIANA CODE § 31-16-8-1(b) for the first time and argued that modification was permissible because his support deviated more than twenty percent from the amount that would be ordered under the Child Support Guidelines and because

8

it had been at least twelve months since the trial court had issued the child support order. *Id.* at 794. A panel of this Court affirmed the trial court, determining that because the parents had contemplated and agreed to college expenses in their agreement, their child's decision to actually enroll in college was not a change in circumstances. *Id.* at 793. We also found that Terry had waived his subsection (2) argument by failing to raise it at trial. *Id*. at 794.

Significantly, although we found that Terry had waived his subsection (2) argument, we noted in dicta that reducing support on the basis of subsection (2) alone would "vitiate[] the agreement of the parties and run[] contrary to the public policy of encouraging parties to agree on matters of child custody and support." *Id.* As a result, we concluded—also in dicta—that "when a parent has agreed to pay support in excess of the Guidelines and which could not be ordered by a trial court, that parent must show a substantial change in circumstances independent of the twenty percent deviation to justify modification." *Id.* at 795.

Seven years after *Hay*, we decided *Kraft*, 868 N.E.2d at 1189, in which we declined to adopt the dicta in *Hay*. In *Kraft*, John Kraft ("Kraft") and Wendy Hall ("Hall") incorporated a settlement agreement into their decree of dissolution of marriage. *Id.* at 1183. Six years later, they agreed to modify the agreement. *Id.* In their modified agreement, Kraft and Hall acknowledged that their agreed upon child support was not necessarily consistent with the Child Support Guidelines but instead represented "a framework of competing positions." *Id*.

9

Subsequently, Kraft filed a petition to modify his child support obligation as a result of a substantial decrease in his earning capacity and on the grounds listed in INDIANA CODE § 31-16-8-1(b)(2)—that it had been more than twelve months since the trial court's order and that his child support obligations deviated by more than twenty percent from the Child Support Guidelines. *Id.* at 1185. Hall did not dispute that Kraft met the requirements of subsection (2) but instead argued that we should adopt *Hay*'s reasoning and require Kraft to make a showing of a substantial change in circumstances because he had agreed to a child support amount that deviated from the Guidelines. *Id.* at 1186.

On appeal, another panel of this Court declined to adopt *Hay*'s reasoning. *Id.* at 1187. We noted that the dicta in *Hay* contravened public policy because it could discourage parents from reaching agreements regarding child support if they knew they would have a "tougher time changing the agreement later." *Id.* We also noted that Indiana law had consistently distinguished between agreements concerning property and maintenance and agreements concerning child support, custody, and visitation. *Id.* Whereas the former have prohibitions on modification absent the consent of the parties, our Supreme Court has held that "'[t]he same principles and standards [regarding the freedom to contract] cannot apply to child support.'" *Id.* (quoting *Voigt v. Voigt*, 670 N.E.2d 1271, 1278 n. 10 (Ind. 1996)). In support of that principle, we found the Supreme Court's opinion in *Meehan v. Meehan*, 425 N.E.2d 157 (Ind. 1981), *superseded by statute as stated in Reinhart*, 938 N.E.2d at 793 n.2, especially persuasive. In *Meehan*, the Supreme Court held that child support requirements could be modified under the then-

10

applicable statute governing child support modifications, even in instances where the original child support was established pursuant to the agreement of the parties. *See id.* at 160. Based on *Meehan*, and the additional policies and principles, the *Kraft* Court disagreed with *Hay* and held that "we should interpret [INDIANA CODE] § 31-16-8-1 as it is written regardless of whether the child support order has been entered pursuant to the terms of a settlement agreement and regardless of whether the agreement to pay child support is in excess of the guidelines." *Kraft*, 868 N.E.2d at 1189.

Three years later, in *Reinhart*, another panel of this Court declined to follow *Kraft* and instead adopted the dicta in *Hay*. *Reinhart*, 938 N.E.2d at 791. The parents in *Reinhart* entered into a settlement agreement in which the father acknowledged that his monthly payment was in excess of the amount that would be required under the Child Support Guidelines. *Id.* at 790. A year later, the father filed a petition to modify his custody obligations, arguing that a modification was warranted under INDIANA CODE § 31-16-8-1(b)(2) because it had been over twelve months, and his support deviated by more than twenty percent from the Guidelines. *Id.* On appeal of the trial court's denial of his petition, we analyzed the father's argument under the doctrine of invited error and held that he could not take advantage of his own error in agreeing to a greater amount of support and receive a later modification of that support. *Id.* at 791. We adopted the language in *Hay* that "when a parent has agreed to pay support in excess of the guidelines and which could not be ordered by a trial court, that parent must show a substantial change in circumstances independent of the twenty percent deviation to justify modification." *Id.* at 792.

11

As the above cases illustrate, different panels of this Court have had conflicting interpretations of INDIANA CODE § 31-16-8-1(b)(2), and we would like to draw our Supreme Court's attention to this conflict for resolution. However, in light of the facts of this case and several general principles guiding issues of child support, we conclude that the *Kraft* Court's interpretation is the most appropriate here.

First, we note that the plain language of the statute does not create a distinct standard for modification of child support orders that are the result of child support agreements. All of the above cases, as well as another listed below, acknowledged that the plain language of INDIANA CODE § 31-16-8-1(b) creates two independent grounds for modifying child support, which are separated into subsections (1) and (2). *See MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940 (Ind. 2005) ("[T]he statute presents alternative methods of seeking modification—compliance with [s]ubsection (1) or, in the alternative, compliance with [s]ubsection (2) . . . ."); *Hay*, 730 N.E.2d at 794 ("While we recognize the plain language of the statute would permit modification under the[] circumstances" where father is paying more than twenty percent than required under the Guidelines, "we find it difficult to believe that the legislature intended to permit a child support agreement to be so easily circumvented . . . ."); *Kraft*, 868 N.E.2d at 1189 ("Under the clear language of [Indiana Code] § 31-16-8-1, Kraft was entitled to a modification of the child support order if he demonstrated *either*: [the requirements of subsection] (1) or [the requirements of subsection] (2) . . . .") (emphasis in original); *Reinhart*, 938 N.E.2d at 791 ("[INDIANA CODE] § 31-16-8-1 sets out alternative methods

of seeking modification—compliance with [s]ubsection (1) or, in the alternative, compliance with [s]ubsection (2).").

While acknowledging that the plain language of INDIANA CODE § 31-16-8-1(b) creates two independent grounds for modification, though, none of these cases have held that the plain language of the statute creates an exception requiring a petitioner to prove *both* grounds of section 31-16-8-1(b) when that petitioner has agreed to an alternate amount of support pursuant to a settlement agreement. Such an interpretation would be equivalent to the results of *Hay* dicta and the *Reinhart* holding. Yet *Hay* and *Reinhart* did not base their conclusions on the plain language of the statute. Nor can we find any exception justifying such a conclusion in the statute's plain language. The "or" separating subsections (1) and (2) clearly indicates that the two subsections establish separate grounds for modification, and there is not any internal or subsequent language limiting the independence of those subsections.

Both this Court and our Supreme Court have emphasized the importance of adhering to the plain language of the support modification statute. *See Kraft*, 868 N.E.2d at 1188-89. In *Kraft*, this Court noted that in *Meehan* the Supreme Court stated that this adherence is "imperative." *Id.* at 1188 (quoting *Meehan*, 425 N.E.2d at 160). Subsequently, the *Reinhart* Court stated that one of its reasons[2] for declining to follow

---

[2] Another reason the *Reinhart* Court cited was that the Supreme Court stated in dicta in *MacLafferty* that the result in cases involving the modification of child support obligations "'might well be affected by prior agreements of the parties.'" *Reinhart*, 938 N.E.2d at n. 2 (quoting *MacLafferty*, 829 N.E.2d at n. 5). However, as this dicta was in a footnote in *MacLafferty*, it is clear that the *MacLafferty* Court was merely acknowledging the existence of the *Hay* decision rather than expressly approving its language. *See MacLafferty*, 829 N.E.2d at n.5. Instead, the *MacLafferty* court specifically states that the statute presents "alternative methods of seeking modification. . . ." *See id.* at 490.

*Kraft* was that *Kraft* was based on *Meehan*, which was in turn based on an out of date version of the support modification statute.[3] *See Reinhart*, 938 N.E.2d at n. 2. However, the *Reinhart* Court's dismissal of *Kraft* overlooks the *Kraft* Court's reason for relying on *Meehan.* The *Kraft* Court cited *Meehan* for the proposition that we must adhere to the plain language of the child support modification statute. *See Kraft*, 868 N.E.2d at 1189 ("Following the Supreme Court's directives in *Meehan*, we conclude that we should interpret [INDIANA CODE] § 31-16-8-1 as it is written regardless of whether the child support order has been entered pursuant to the terms of a settlement agreement and regardless of whether the agreement to pay child support is in excess of the guidelines."). That principle is still relevant here. Moreover, even though *Meehan* concerned a different version of the modification statute, the plain language of the current statute, as discussed above, leads to the same conclusion as the *Meehan* Court that the modification standard does not distinguish between support orders based on the origin of their terms. *See Meehan*, 425 N.E.2d at 160.

In addition to our analysis of the plain language of the statute, we decline to adopt the *Reinhart* Court's reasoning because the circumstances before us are factually distinguishable. Both *Hay* and *Reinhart* concerned parents who had agreed to a *higher* amount of support than they would pay under the Child Support Guidelines. Consequently, based on the doctrine of invited error, this Court concluded that they could

---

[3] The version of the support modification statute at issue in *Meehan* provided that "[p]rovisions of an order with respect to child support may be modified or revoked. Such modification shall be made only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." *See Meehan*, 425 N.E.2d at 160 (quoting I.C. § 31-1-11.5-17(a) (Burns 1980 Repl.)). In other words, this version of the statute did not provide the current statute's second ground for support modification that is listed in subsection (2).

14

not benefit from their respective errors and receive later reductions in their support obligations. Here, however, Mother agreed to a *lower* amount of support than Father would have had to pay under the Child Support Guidelines.

It is a well-established rule of child support that "'the right to support lies exclusively with the child[] and that a parent holds the child support payments in trust for the child's benefit.'" *Roop v. Buchanan*, 999 N.E.2d 457, 460 (Ind. Ct. App. 2013) (quoting *Bussert v. Bussert*, 677 N.E.2d 68, 71 (Ind. Ct. App. 1997), *trans. denied*). The custodial parent acts as a trustee of the payments and is to use them for the benefit of the child. *Id.* Because child support payments are for the benefit of children, a parent may not "bargain them away," even at the other parent's urging. *Schwartz v. Heeter*, 994 N.E.2d 1102, 1107 (Ind. 2013).

In *Schwartz*, a father tried to argue, after a revision in the Child Support Guidelines, that the trial court should base his support obligations on the previous version of the Guidelines that had formed the basis of his settlement agreement with the mother. *Schwartz*, 994 N.E.2d at 1107. The father contended that if he had known the Guidelines could change, he would have offered the Mother less support in their settlement negotiations. *Id.* The Supreme Court did not find this argument persuasive because it was not Mother's right to "bargain . . . away" the support. *See id.*

Likewise, here, Mother's alleged "invited error" did not harm herself—it harmed M.R., who subsequently did not receive the support that she should have received from Father. As a result, it would be inappropriate for us to require Mother to meet a higher standard of proving that circumstances have substantially changed since the trial court's

original order before granting her petition to modify support. While the doctrine of invited error may be justifiable in instances when a parent has agreed to pay *more* than what that parent must pay, it surely should not be justifiable in instances such as the current case where a parent has agreed to pay less than required. Such a conclusion would be against public policy and against our well-established principle that child support payments are for the benefit of children, not their parents. *See Johnson v. Johnson*, 999 N.E.2d 56, 60 (Ind. 2013) (recognizing that our Indiana Code requires "trial courts to consider, among other things, 'the standard of living the child would have enjoyed had the marriage not dissolved or had the separation not been ordered' in fashioning (or modifying) a child support order."). Accordingly, we conclude that the trial court did not err in granting Mother's petition to modify child support since Mother met the requirements of subsection (2) that more than a year had passed since the issuance of the support order and that the order deviated from the Child Support Guidelines by more than twenty percent.

2. Calculation of Support

Next, Father argues that, assuming Mother's petition was procedurally valid, the trial court erred in calculating his support. He notes that a trial court may, in its discretion, deviate from the presumptive amount specified in the Child Support Guidelines if the application of the Guidelines would result in an unjust award. Here, he claims that an amount greater than the $350 per week he currently pays would be unjust. In support of this claim, Father points to Mother's admission that raising M.R. only cost her $247 per week. He also notes that:

16

> In developing these guidelines, a great deal of reliance was placed on the research of Thomas J. Espenshade, generally considered the most authoritative study of household expenditures. Espenshade's parental expenditures on children based upon expenditure categories are divided essentially into ten categories: food at home (13.9%), food away from home (4.9%), shelter (12%), fuel and utilities (3.9%), household goods (10.2%), clothing (7.1%), transportation (26.5%), healthcare (5.5%), recreation (10.1%), and miscellaneous (5.9%).

(Father's Br. 20) (internal citations omitted). Because Mother does not have a mortgage payment for her home, and Father is responsible for M.R.'s healthcare and other miscellaneous expenses, Father claims that the trial court should deduct the above corresponding percentages of payments from his modified support requirement.

In 1989, our Supreme Court adopted the Child Support Guidelines to "'facilitate adequate support awards for children, to make awards more equitable by ensuring consistent treatment of persons in similar circumstances, and to improve the efficiency of the process of determining support.'" *Eppler v. Eppler*, 837 N.E.2d 167, 174 (Ind. Ct. App. 2005) (quoting *Garrod v. Garrod*, 655 N.E.2d 336, 338 (Ind. 1995)). Our Supreme Court has advised that achieving those ends does not require treating the Guidelines as "immutable, black letter law." *Garrod*, 655 N.E.2d at 338. There are situations that "call for flexibility[,] and courts should avoid the pitfall of blind adherence to the [Guidelines'] computation for support without giving careful consideration to the variables that require changing the result in order to do justice" in such circumstances. *Id.* Deviation is proper if strict application of the Guidelines would be "unreasonable, unjust, or inappropriate." *Id.*

The Guidelines set forth an income shares model that apportions the cost of children between the parents according to their means and based on the premise that children should receive the same portion of parental income after a dissolution that they would have received if the family had remained intact. *Glover v. Torrence*, 723 N.E.2d 924,936 (Ind. Ct. App. 2000). A trial court's calculation of a child support obligation under the Child Support Guidelines is presumptively valid. *Id.* Reversal is merited only where the determination is clearly against the logic and effect of the facts and circumstances. *Id.* We will not reweigh the evidence or judge the credibility of witnesses, and we will consider only the evidence and reasonable inferences favorable to the trial court's judgment. *Id.*

First, we reject Father's argument that he should not have to pay more than $350 per week because Mother admitted that she currently supports M.R. on less. As we stated above, the standard is not whether a parent can support a child on a certain amount of support. Instead, the trial court apportions support between the parents on the premise that a child should receive the same portion of parental income after dissolution that they would have received if the family had remained intact. *See id.* Mother testified that even though she is able to provide for M.R.'s basic needs on less than $350 per week, M.R.'s standard of living has changed substantially on this amount of support. M.R. rarely gets to eat at the restaurants where she used to eat, shop at the stores where she used to shop, or go on vacations like the ones she used to go on before the dissolution. Although these items are not necessary for M.R.'s basic survival, she is no longer living as she would if the family had remained intact.

18

Turning to Father's argument that the trial court should have reduced his support requirement because Mother does not have to pay a mortgage on her house and because he pays for M.R.'s health insurance, we note that that the trial court did subtract $13.64 per week to credit Father for his payment of M.R.'s health insurance. In addition, the trial court's modified support order required Mother to pay the first $4,807 per year of M.R.'s uninsured healthcare expenses. In light of those factors, we will not address that argument. We will, however, address Father's argument concerning Mother's mortgage.

The commentary to the Child Support Guidelines provides that:

> Likewise, imputed income may be substituted for, or added to, other income in arriving at weekly gross income and includes such items as free housing, a company car that may be used for personal travel and reimbursed meals or other items received by the obligor that reduce his or her living expenses.

Child Supp. G. 3(A), cmt. 2. The decision regarding whether or not to impute income to a parent is a matter for the trial court's discretion. *Miller v. Sugden*, 849 N.E.2d 758, 763 (Ind. Ct. App. 2006), *trans. denied*. However, the commentary to the Guidelines provides additional guidance, stating that:

> Whether or not income should be imputed to a parent whose living expenses have been substantially reduced due to financial resources other than the parent's own earning capabilities is also a fact-sensitive situation requiring careful consideration of the evidence in each case. It may be inappropriate to include as gross income occasional gifts received. However, regular and continuing payments made by a family member, subsequent spouse, roommate, or live-in friend that reduce the parent's costs for rent, utilities, or groceries, may be the basis for imputing income.

Child Supp. G. 3(A), cmt. 2(D).

19

Based on this standard, we cannot agree with Father that the trial court abused its discretion because it did not impute to Mother income for her lack of a mortgage payment. In spite of the fact that Mother does not have to pay a mortgage, Father has not shown that Mother's living expenses are "free." She must presumably still pay the other usual expenses of being a homeowner, including utilities, property taxes, and maintenance, and Father has not provided any evidence to the contrary.

In *Thomas v. Orlando*, 834 N.E.2d 1055, 1060 (Ind. Ct. App. 2005), we held that a mother's rent-free living situation did not free up money to support her child because she was a "young, full-time student, trying to raise a baby, who had no income on which to draw to pay for living expenses." We contrasted this circumstance with the Supreme Court's decision in *Glass v. Oeder*, 716 N.E.2d 413 (Ind. 1999), where the Supreme Court found that a father's rent-free living arrangement was imputed income because he also owned a corporation and received $40,000 per year as income. *Id.* We found that because the mother's rent-free arrangement was not "an extra, padded amount that added to her already-present ability to support herself and her child[,]" the trial court did not abuse its discretion in determining that her living situation was not additional imputed income. *Id.* at 1061. Instead, the trial court properly looked to the totality of the circumstances. *Id.* In contrast, the father in *Glass* was able to support himself and his child without the imputed income. *See id.*

Although Mother here does have weekly income, she is also a full-time student and receives an income of only $290 per week. Her lack of a mortgage is not an "extra, padded amount that adds to her already present ability to support herself and her child."

20

*See id.* at 1061. Also, Father has an income of $25,747 per week. In light of this discrepancy and the fact that, regardless of Mother's lack of mortgage, her living expenses are not "free," we conclude that the trial court did not abuse its discretion by deciding not to consider Mother's mortgage-free house imputed income. The trial court's award was not unjust.

Because we are not persuaded by Father's arguments and because the trial court followed the Child Support Guidelines in calculating Father's modified amount of child support, we conclude that the trial court did not abuse its discretion in its support calculation.

Affirmed.

MATHIAS, J., and BRADFORD, J., concur.